# GILMAN PAINT & VARNISH CO. *v.* LEGUM

[No. 152, October Term, 1950.]

*Decided May 17, 1951.*

*Rehearing denied June 15, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Irving B. Grandberg* for appellant.

*Robert F. Skutch, Jr.,* with whom were *Weinberg & Green, Leonard Weinberg,* and *Jack C. Merriman* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellant sued the appellee, together with C. Eugene Tovell and Walter J. Levy, severally and as partners, trading as Tovell Construction Company, on an open account for four shipments of certain paint goods, the first of which was on January 10, 1948, and the last February 6, 1948. The balance due for these shipments is admitted to be $935.27. The goods were shipped from Chattanooga, Tennessee, to Greenville, Georgia, and each bill contains the notation: "F.O.B. CHATTA FRT ALLWD". The record is entirely silent as to where the order came from, although it may perhaps be presumed that it came from Greenville, Georgia, where the Tovell Construction Company was engaged in manufacturing.

Suit was brought in the Baltimore City Court. Of the three defendants, only the appellee was summoned.

He filed the general issue pleas and a special plea, stating that he is a limited partner only of the Tovell Construction Company. The question to be decided in this case is what was his status at the time of the purchases from the appellant. The case was heard before the court sitting without a jury, and it was held that he was only a limited partner and not liable to the appellant, and, therefore, a judgment was entered in his favor for costs. From this judgment the plaintiff appealed.

On the first day of December, 1942, the appellee, whose address is given as Baltimore, Maryland, and C. Eugene Tovell, whose address is given as Reisterstown, Maryland, and Walter J. Levy, whose address is given as Baltimore, Maryland, filed a certificate of limited partnership under the name of Tovell Construction Company to extend two years from that date. This certificate, which was acknowledged by all the parties, and was recorded on December 17, 1942, in the Superior Court of Baltimore City, provided that Tovell and Levy were equal general partners, and Legum was the limited partner. It listed the cash contributed by each of the general partners as $25,000.00, and by Legum as $150,000.00, and Legum's share of the net profits was to be 33⅓ per cent. A similar certificate extending the original agreement for another period of two years was acknowledged before a notary on December 1, 1944, but was not recorded until July 30, 1948. Another certificate, dated the 29th of December, 1945, extended the second certificate to January 31, 1946, after which it was to be automatically renewed from month to month until superseded or terminated. This was acknowledged on December 29, 1945, but was not recorded until July 30, 1948. It appears, therefore, that at the time this merchandise was sold, there was nothing on record in Maryland which indicated that this limited partnership existed beyond December 1, 1944. The certificate on record set out that the time of return of the limited partner's contribution was to be "Immediately upon winding up of partnership

affiairs as soon after expiration of term as possible." The nature of the business was stated to be general construction and construction contracting, and the principal place of business, 403 West Monument Street, Baltimore.

It appears from the record that the Tovell Construction Company was engaged in manufacturing prefabricated houses at different places in Georgia in 1948, and the appellant contends that as its shipments were to Georgia, the question of the *status* of the appellee should be determined by Georgia law. It states that this result is fortified because the Company had changed the nature of its business, was conducting a different kind of enterprise in Georgia, and that the latter State was its principal place of business. These conclusions we do not find substantiated in the record, and we are unable to adopt them as facts.

When a manufacturer receives an order from a business concern in another state, he is not required to investigate the records in all of the other states to find out what is the status of his would-be purchaser and who compose it. But he cannot assume that his prospective purchaser is necessarily a corporation or a partnership of the state where the order is to be sent. All companies doing business in a state are not residents of that state. It does not seem to be an unreasonable expectation that a careful shipper would ascertain what are the facts about the residence of the consignee before shipment is made. There is not the slightest evidence in the record that any inquiry was made by the appellant whether the Tovell Construction Company was a corporation or a partnership, or, if the latter, who composed the partners or in what state it was organized. None of the officers of the appellant, nor any of its employees connected with the shipment, testified in the case. Its counsel, who was called by the defendant, testified that he inserted on the invoices filed with the declaration, the names of Tovell, Levy and Legum as partners, that these were not on the invoices when he received them

from his client, and he got the names from his client when he asked who the Tovell Construction Company was. The record does not disclose when his client found out who the partners of the Tovell Construction Company were, or how it found out. There is nothing to show that any representation was made to the appellant at any time that Legum was a partner, either general or special, nor is there anything to show that appellant relied upon the supposed fact that he was a general partner. If inquiry had been made, the appellant would have found that the three partners were all Marylanders, two of them being Baltimoreans. Appellant's contracts were apparently consummated in Tennessee, as the deliveries were F.O.B. Chattanooga. *Park Beverage Co. v. Goebel Brewing Co.*, 197 Md. 369, 79 A. 2d 157. Under these circumstances, we think that the question of what kind of a partner the appellee was in January and February, 1948, must be decided according to Maryland law, because the actual facts show that the partners were all Marylanders, the partnership agreement was made in Maryland, it was a Maryland partnership in its inception, and no representations otherwise were made to the appellant.

The Maryland law is the Uniform Limited Partnership Act, incorporated in Article 73 of the Code, and passed in 1918 by Chapter 280 of the acts of that year. There had been a previous statute which had been the subject of a number of decisions, notably *Lineweaver v. Slagle*, 64 Md. 465, 2 A. 693. That decision followed the pattern of decisions in other states, and such decisions led to the adoption of the Uniform Act. In order to understand the purpose of these acts, it is necessary to go back to the common law and the earlier decisions. In the case of *Waugh v. Carver* (1793) 2 *Henry Blackstone* 235, it was held that the test of the existence of a partnership was profit-sharing. That decision was generally followed, although somewhat modified, and the Supreme Court of the United States in *Meehan v. Valentine* (1892) 145 U. S. 611, 12 S. Ct. 972, 975, 36 L. Ed. 835,

said that those "who own and share the profits" are partners. Limited partnerships, however, had been recognized by the civil law, and acts were passed in many of the states providing for them. The general purpose of these acts was not to assist creditors, but was to enable persons to invest their money in partnerships and share in the profits without being liable for more than the amount of money they had contributed. The reason for this was to encourage investing. The courts, however, continued to construe these partnership acts strictly, as in derogation of the common law, and it became evident that, as drawn, they did not accomplish the purpose for which they were intended. Consequently, the National Conference of Commissioners on Uniform State Laws adopted a limited partnership act in 1917, and recommended it to the legislatures of the several states.

The committee of the Conference which prepared the draft of the law was its committee on commercial law, the chairman of which was William Draper Lewis of the Law School of the University of Pennsylvania. A discussion of the act and its purposes will be found in an article by Mr. Lewis in *University of Pennsylvania Law Review*, Vol. 65, p. 715, published in June, 1917. In that article, he makes the following statement: "The act proceeds on the assumption that no public policy requires a person who contributes to the capital of a business, acquires an interest in the profits, and some degree of control over the conduct of the business, to become bound for the obligations of the business, provided creditors have no reason to believe at the times their credits were extended that such person was so bound." The same statement is made in the Commissioners' note to the Uniform Limited Partnership Act, 8 Un. Laws Ann., p. 2.

Section 11 of the Uniform Act (Art. 73, Sec. 11) reads as follows: "(Status of Person Erroneously Believing Himself a Limited Partner.) A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has

become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income." Section 28 (Art. 73, Sec. 28) establishes as one of the rules of construction that: "The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this article." Section 6 (Art. 73, Sec. 6) provides:

"(Liability for False Statements in Certificate.) If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any party to the certificate who knew the statement to be false

(a) At the time he signed the certificate, or

(b) Subsequently, but within a sufficient time before the statement was relied upon to enable him to cancel or amend the certificate, or to file a petition for its cancellation or amendment as provided in Section 25 (3)."

The contention of the appellant in this case is that had it examined the records in Maryland in January or February, 1948, it would have found only the record of the limited partnership entered into in 1942 and ending in 1944, and therefore there was nothing on record to lead it to suppose that the appellee was a limited partner only, and as to it, he must be considered a general partner. However, there was then nothing on record to show that Legum continued as a partner at all after 1944, and, from the statements in the original limited partnership agreement, it might readily have been assumed that Legum's share had been returned to him, and he was no longer a partner in any sense. As we have indicated earlier, there is nothing in the record to show that the appellant at any time prior to, or during, its transactions with the Tovell Construction

Company, had any knowledge who were the partners, nor was there any evidence that Legum was in any way held out to it as a partner.

However, Legum does not deny that he was a partner in 1948, but merely that he was a general partner, and he supports this contention by the later certificates and extensions which cover the period during which the credit was given by the appellant. On the face of the record in January and February, 1948, Legum was not a limited partner, but Section 11, *supra,* provides a method by which he can escape general liability. That section, contained in the Illinois act, was construed by the Supreme Court of the United States in the case of *Giles v. Vette,* 263 U. S. 553, 44 S. Ct. 157, 161, 68 L. Ed. 441. In that case, an attempt had been made to form a brokerage firm with two general partners and two limited partners, the latter being Messrs. Hecht and Finn. A limited partnership agreement was executed under the old act of 1874 and was recorded pursuant to the provisions of that act on July 2, 1917. However, the Act of 1874 had been repealed and, on July 1, 1917, there was substituted for it the Uniform Limited Partnership Act. Under this last act, limited partnerships were not authorized to do a brokerage business. Under these facts, the Supreme Court held that there was no limited partnership under the Act of 1874, because it had expired when the certificate was filed, and there could be no limited partnership for the purposes intended under the act of 1917, nor was there any attempt to form one under that act.

Nevertheless, the court relieved Hecht and Finn from any obligation as general partners because, under Section 11, each erroneously believed that he had become a limited partner in a limited partnership. "Neither took any part in the control of the business or exercised any rights or powers in respect to it other than those which might belong to one not a general partner." They made the renunciation provided for in Section 11, and no person suffered any loss or disadvantage because it was not

made earlier, or because of reliance on any statement in the certificate. They returned all the dividends they had received during the course of the business on the $190,000.00 which they had contributed. The court said, "It need not be decided whether such return was necessary." In making this decision, the Supreme Court traced the common law doctrine and the prior statutes, not only in Illinois, but in other states, citing among the cases some which adopted the older and stricter view, including *Lineweaver v. Slagle,* 64 Md. 465, 2 A. 693, *supra,* and held that the Uniform Limited Partnership Act and the Uniform (General) Partnership Act, passed at the same time, relaxed the strictness of the rule against limitation of liability.

The appellee in the case before us is in a similar situation to Hecht and Finn. He too erroneously believed he was a limited partner, not being aware that certificates to that effect had not been filed. If he has complied with Section 11, then he cannot be held liable as a general partner.

The record shows that on December 31, 1943, when the first limited partnership agreement was on file in the Superior Court of Baltimore City, he withdrew the sum of $13,365.16, which was one-third of the profits. He testified that this was because the other partners said they needed their part of the profits to pay their income taxes, and, therefore, he took his. On December 31, 1945, when there was no partnership agreement on file covering this period, he was credited on the books of the corporation for one-third of the profits for the year 1945, $1,100.10. On December 31, 1946, under the same circumstances as to the record of his partnership, he was similarly credited with one-third of the profits for the year 1946, $1,473.96. On December 31, 1947, also under the same circumstances, he was similarly credited with one-third of the profits for the year 1947, $3,903.82. None of these last three items was received by him, although he said that he had a slip of paper each year showing this credit, and that he included it

in his income tax. The company has now been liquidated, and there is no interest in future profits to be renounced. Appellee did not return the $13,365.16. It seems, therefore, that we must decide the question which the Supreme Court left open in *Giles v. Vette, supra,* namely, whether he is required to pay back the profits he has received before he can rely on Section 11.

There seems to have been no decision by any court on this question. It is discussed in an article in 71 *University of Pennsylvania Law Review,* p. 150-151. It is there concluded that Section 11 does not require a repayment of the past due profits received if these do not exceed the profits he would have received as a limited partner. The article states: "Under this *proviso*" (Sec. 11) "an interesting question arises: whether it is necessary for a person erroneously believing himself a limited partner to pay back all past profits and interest to avoid being held liable as a general partner, or whether he need only renounce all further interest in the profits of the business * * * it is submitted, the words" (in Section 11) "are perfectly clear, for a person can hardly be said to have an interest in profits he has already received. He has the profits themselves. The *interest* he has is in profits not yet paid over."

This conclusion seems to have merit, and it is fortified from the standpoint of verbiage by the general usage of the word "renounce" which does not commonly have the meaning of "return". It is generally used in the sense of giving up a right, or a claim. However, the intention back of the *proviso* is more important than the actual words used. We think the most the statute could have intended was to put creditors in the position they would have occupied had there been no limited partner at the time their debts were contracted. We do not have to decide in this case what would be required of the appellee had he withdrawn profits after February, 1948. The only withdrawal of profits by him was in December, 1943, more than four years before the appellants made any shipments to the Tovell Construction Company, and

at a time when there was a record of his limited partnership. Under these circumstances at least, the appellee was not obliged to return the profits so received in order to claim the benefit of Section 11.

Appellant also contends that none of the limited partnership certificates recorded by appellee was valid because they were all *acknowledged,* instead of being sworn to. Article 73, Sec. 2 (1) (a) states that the parties desiring to form a limited partnership shall "sign and swear to a certificate". There is, of course, a difference between acknowledging a paper to be the act of the party executing it, and making an affidavit that the facts contained in it are true. The difference is illustrated by the conveyancing statute with respect to mortgages. A mortgage has to be acknowledged by the maker as any other deed. Article 21, Sec. 33. Such an acknowledgement is defined by Article 21, Sec. 6. This acknowledgement is to be made by the mortgagor, but the mortgagee is also required to make an oath that the consideration in the mortgage is true and *bona fide.* Article 21, Sec. 34. Here, therefore, in the same instrument, one of the parties acknowledges it to be his act, and the other makes oath that the consideration is bona fide.

We do not, however, have to decide in this case whether the acknowledgements made by the appellee sufficiently complied with the limited partnership law, because, if they did not, he would in this respect also be entitled to claim the benefit of Section 11.

Appellant also suggests that there were changes in the character of the partnership because the business changed from construction of houses to making boxes, crates and parts for prefabricated houses. The evidence does not seem to show clearly what was originally done by the partnership, but the words "general construction" in the partnership agreement would seem to cover the nature of the work done in Georgia.

Appellant also claims that the appellee contributed much more than the $150,000.00 mentioned in the limited partnership agreement. The evidence of this is a copy

of the ledger capital investment account of the appellee, made by the bookkeeper of the partnership in the latter part of 1948. This account is not at all clear because it includes not only the original capital investment of $150,000.00, but also the four items of profits already referred to, one of them being the $13,365.16 which was withdrawn, and it also includes three unexplained items, each called additional capital investment, one of December 31, 1943, for $50,000.00, one of February 10, 1944, for $25,000.00, and one of December 31, 1946, for $15,000.00. The appellant adds all of these figures together and claims that the appellee contributed $259,843.04 to the partnership. The appellee did not know anything about this capital account, which is incorrect on its face in that it included as an investment the $13,365.16 which was actually a payment. The appellee denied specifically that he ever made any contributions to the capital of the company, other than the original $150,000.00. He said that he had lent it money, some of which had been repaid, and some not. We agree with the trial judge that there is no sufficient proof that the appellee contributed more than the original investment of $150,000.00. Even if he had contributed these amounts and did execute the later partnership agreements, which did not refer to them and therefore might be considered as containing false statements, he could only be held liable to anyone who suffered loss thereby, (Article 73, Sec. 6), which was not the case with appellant. It is difficult to conceive how a creditor could suffer loss by relying on an investment stated in a certificate of partnership which was smaller than the amount actually contributed. It is when the actual contribution is less than the amount stated in the certificate that reliance upon it may cause loss to a creditor.

The appellant also contends that the appellee took an active part in the operation and conduct of the business, but this seems to be based largely on the fact that when A. M. Legum and J. R. Legum loaned $60,000.00 to the partnership, they required the partners to enter

into an agreement that Leslie Legum, the son of A. M. Legum, should exercise a general overall suprevision of the business. These agreements, however, were made for the benefit of the parties who loaned them money, and the appellee was not one of these. It is not shown that he engaged in any way in the conduct of the business, either through Leslie Legum or directly.

In view of our conclusions on the various contentions of the appellant outlined above, it becomes clear that the appellee cannot be held as a general partner of the Tovell Construction Company. The judgment in his favor for costs, therefore, will be affirmed.

*Judgment affirmed with costs.*