JAMES McCULLY ET AL. *v.* DAVID RADACK

[No. 1029, September Term, 1974.]

\* \* \*

JOHN HARMS ET AL. *v.* DAVID RADACK

[No. 1114, September Term, 1974.]

*Decided June 30, 1975.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Sheldon H. Braiterman* and *James D. Johnson* for appellants.

*Robert A. Klein* and *Raymond Dickey*, with whom were *Danzansky, Dickey, Tydings, Quint & Gordon* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

History is uncertain whether William Arthur Dunkerly [1] ever uttered the signal remark that, "This is just like that only it's different," but if he did he may well have been referring to that hybrid of the law, the limited partnership. It is neither a partnership, as that term is usually defined, nor is it a corporation, although it bears a strong resemblance to both. It has been said that a limited partnership is in the nature of an investment, *In re Panitz & Co.*, 270 F. Supp. 448 (D. Md. 1967) *aff'd sub nom. Hammerman v. Arlington Fed. Sav. & Loan Ass'n*, 385 F. 2d 834 (4th Cir. 1967). A limited partner is not bound by the obligations of the partnership, nor is he subject to any personal liability beyond his investment in the venture. *Gilman Paint & Varnish Co. v. Legum*, 197 Md. 665, 80 A. 2d 906 (1951).

---

1. Dunkerly, (c. 1861—1941) under the pseudonym of John Oxenham, was an English novelist, poet and journalist. He was on the staff of the *Idler* and *To-Day*, both of which he initiated with Jerome K. Jerome. A prolific writer, he published *Bees in Amber* (1913), *All's Well* (1916), *Gentlemen — The King!* (1920) and other volumes. *See* Potomac Elec. Power Co. v. Lytle, 23 Md. App. 530, 328 A. 2d 69 (1974).

The limited partnership, unknown at common law, nevertheless historically can be traced to the medieval enterprise known as the *commenda*, whereby a passive investor financed a trader's operations and received a share of profits, but risked no more than the sum of his capital contribution.[2]

To afford investors "the same sense of security from any possibility of unlimited liability as the subscribers to the shares of a corporation",[3] the National Conference of Commissioners on Uniform State Laws promulgated in 1916 the Uniform Limited Partnership Act. Adopted in forty-eight states,[4] the ULPA "is in effect, the limited partnership law of the United States." [5] The General Assembly of Maryland adopted the ULPA by Laws 1918, ch. 280. It is now codified as Md. Ann. Code art. 73.[6] The article spells out in unambiguous terms what constitutes a limited partnership, its formation, business purposes, name, rights and liabilities.

This appeal arises from the ruins of a limited partnership which had purchased a marina located at Galesville, Maryland, and operated it under the name of West River Marina Limited Partnership. In March, 1973, the partnership entered into a deed of trust with the Maryland West River Marina Corporation. In February, 1974, the partnership defaulted on its obligation, and the trustees instituted foreclosure proceedings in the Circuit Court for Anne Arundel County. The property was sold at auction to John Harms and Vincent Pirro, Jr., a partnership, both of whom were limited partners in the West River Marina Limited Partnership.

After the payment of prior liens, trustees' commissions,

---

2. See 8 Holdsworth, *A History of English Law,* 195 (1926); Comment, *Standing of Limited Partners to Sue Derivatively,* 65 Colum.L.Rev. 1463 (1965).

3. Lewis, *The Uniform Limited Partnership Act,* 65 U.Pa.L.Rev. 715, 724 (1917).

4. Only Delaware and Louisiana have not adopted the ULPA. *See* 6 *Uniform Laws Annotated* 559 (Master ed. 1969).

5. 65 Colum.L.Rev. at 1465.

6. The ULPA will appear as Title 10 in the new Corporations and Associations Article of the Code, effective July 1, 1975.

costs and counsel fees, the sum of $20,882.21 remained for distribution. The general partner, David H. Radack, the appellee, filed an exception to the report of the Auditor. Radack noted that an escrow deposit of $17,000.00, which sum was to be used for the purchase of insurance and the payment of taxes on July 1, 1974, was not accounted for in the Auditor's report. The limited partnership, as distinguished from the limited partners, also filed an exception. The partnership alleged that the report contained mathematical errors and erroneous conclusions. Further, the partnership objected to the payment of a counsel fee of $39,036.51 to the attorney for the trustees, characterizing the fee as "overly generous" and "unreasonable on its face."

Radack, through his attorneys, was successful in negotiating a settlement of the dispute with the trustees, who agreed to surrender to the partnership the sum of $46,646.69 in consideration of the partnership's withdrawal of their exceptions. The claim as to the $17,000.00 escrow monies alleged by Radack to be due the partnership, was not to be affected by the agreement. The limited partners, however, thought that $46,646.69 was insufficient.

Under the terms of the limited partnership agreement, after payment of debts of the partnership, surplus funds were to be distributed to the limited partners to the extent of their investment, plus other payment not here applicable, before the general partner could participate. The limited partners had invested the sum of $230,000.00,[7] and obviously, there were not sufficient funds available to make the limited partners "whole". Patently, the general partner would not share in the proceeds. The general partner noted that the limited partners could not be held responsible beyond their investment, while he was liable personally for the entire debts of the partnership, and he observed that the limited partners were gambling with his liability. There is

---

7. The partnership agreement provided that Radack was the sole general partner and the only "Class B Limited Partner." The appellants were designated as "Class A Limited Partners." Radack, in this opinion, is termed "the general partner", and appellants are styled "the limited partners." Radack, as general partner, contributed $55,000.00, and he, as a Class B limited partner, contributed $15,000.00.

an indication in the briefs and pleadings that the general partner would have declined the settlement offer if the limited partners would have agreed to indemnify him to the extent of the trustees' offer. That, however, did not take place because the limited partners offered to post only $20,000.00 as indemnity. The battle line was drawn when the general partner ordered his counsel to accept the trustees' offer. All of the limited partners then filed in the foreclosure proceeding a petition for an injunction. Additionally, or alternatively, they prayed the right to file an exception to the Auditor's report. The trustees filed a motion raising preliminary objection and motions to strike. A hearing was held, and the court dismissed the petition that was brought on behalf of the limited partners on the ground that they had no standing, under Md. Ann. Code art. 73, § 26.

At the same time that all of the limited partners filed their motions in the foreclosure case, some of them filed a separate Bill of Complaint in the Circuit Court for Anne Arundel County. The relief sought by the Bill was substantially the same as that sought in the petition filed in the foreclosure proceeding. The court sustained a motion raising a preliminary objection to the Bill, ruling that the action was identical to that "already before the court" and already decided.

The petition of the appellants that was filed in the foreclosure is replete with allegations of the trustees' breach of their fiduciary duties and alleged concealment of facts from the court Auditor, as well as charges of fraud and collusion on the part of the general partner, supposedly acting in concert with the trustees. The merit of the charges has never been decided because, as we have stated, the trial court, relying on ULPA, § 26, dismissed the petition on the ground that the limited partners were without authority to bring the action.

There appears to be no Maryland appellate decision dispositive of the issue presented. The Court of Appeals in *Safe Deposit Co. v. Cahn,* 102 Md. 530, 62 A. 819 (1906) held:

"Whilst . . . the limited partnership is a going

concern, in which the cash contributed by the special [limited] partner stands for and takes the place of a personal liability in his part; it is entirely appropriate that *sec. 19* of *Art. 73* [8] should enact that 'all suits respecting the business of the partnership shall be brought by and against the general partners only,' except in cases mentioned in the section. [9] And even after a dissolution whilst the cash contribution still forms part of the social assets, it is also proper that the liability due by the firm should be enforced by suit against only the general partners; because in both instances there is no individual liability attaching to the special [limited] partner, since his cash contribution itself measures the limit of his responsibility. . . ." 102 Md. at 546-47.

*Cahn* was not only decided twelve years before the adoption by Maryland of the ULPA, but it is factually inapposite. In that case a suit was brought against a limited partner who withdrew his cash capital contribution and was released "from all responsibility . . . [by the partnership] whilst there . . . *[were] outstanding debts due by* the firm. . . ." The Court refused to allow the limited partner to escape liability because such action "would subvert the whole intent of the legislation in this subject."

Furthermore, the *Cahn* Court was construing the erstwhile limited partnership act in a strict manner, *Gilman Paint & Varnish Co. v. Legum, supra,* as the act was in derogation of the common law. With the adoption of the Uniform Act, the legislature commanded in Md. Ann. Code art. 73, § 28:

"(1) The rule that statutes in derogation of the

---

**8.** The Cahn Court construed the then limited partnership law of Maryland. As we have seen, the General Assembly enacted in 1918 the ULPA, which substantially changed the law of limited partnerships. *See* n. 3, *supra.*

**9.** Section 19 created an exception allowing joinder of a special partner deemed to be a general partner by virtue of circumstances indicating the unwarranted exercise of control.

common law are to be strictly construed shall have no application to this article."

The ULPA is by legislative mandate to "be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it", Md. Ann. Code art. 73, § 28 (2). It would seem, therefore, that we need but examine the case law of such of our sister states as have heretofore considered the problem. Unfortunately, there is not a uniformity of decision, notwithstanding the lofty language of the ULPA relative thereto.

The Court of Chancery of Delaware in *Oil and Gas Ventures, Inc. v. Cheyenne Oil Corp.*, 41 Del. Ch. 596, 202 A. 2d 282 (1964), applying the New Jersey law, held that:

". . . [I]t would appear that in a case of limited partnership only a general partner is a proper party to a proceeding on behalf of or against such a partnership unless the purpose of the suit is to enforce a limited partner's right against or liability to the partnership. N.J.S.A. 42: 2-30. [Cf. Md. Ann. Code art. 73, § 26]" 41 Del. Ch. at 601.

A similar view has been taken by the Supreme Court of Washington in *Lieberman v. Atlantic Mutual Insurance Co.*, 62 Wash.2d 922, 385 P. 2d 53 (1963), and the First District Court of Appeal of Florida in *Vulcan Furniture Manufacturing Corp. v. Vaughn*, 168 So. 2d 760 (Fla. 1964). *See also In re Panitz & Co., sub nom. Hammerman v. Arlington Federal Savings & Loan Ass'n, supra.*

We note the courts of New York, both State and Federal, have taken a view quite to the contrary of that of Delaware, Washington and Florida.

Judge Friendly, writing for the United States Court of Appeals in *Klebanow v. New York Produce Exchange*, 344 F. 2d 294 (2d Cir. 1965) [10] discussed a case wherein plaintiffs, Klebanow and others, were limited partners in a brokerage firm in New York. The partnership agreement provided that

---

10. The Klebanow opinion is the subject of law review commentary appearing in 65 Colum.L.Rev. 1463 (1965) and 40 N.Y.U. L.Rev. 1174 (1965).

upon termination or dissolution of the partnership, the managing partners should, as liquidating trustees, effect the liquidation. Notwithstanding the term "managing partners", however, one Kamerman was the sole managing partner, and he and the other general partners entered into an agreement with various creditors whereby the general partners relinquished control over the partnership, and they executed a power of attorney in favor of an employee of the New York Stock Exchange. Plaintiffs alleged that the defendants engaged in an illegal contract combination and conspiracy with others, unknown to the plaintiffs, and damaged the partnership to the total of $11,000,000.00. The plaintiffs further charged that the Stock Exchange would not allow the managing partner to prosecute a suit against Merrill Lynch, Pierce, Fenner & Smith, Inc., and other possible defendants who were members of the Exchange. The defendants moved to dismiss on the premise, *inter alia,* that plaintiffs lacked, under the New York version of the ULPA, the capacity to sue. Judge Friendly said at 297:

> "... [I]n the main, a limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and 'have on demand true and full information affecting the partnership * * *' See N.Y. Partnership Law [McKinney's Consol. Laws, ch. 39] §§ 98, 99, 112. That the limited partner is immune to personal liability for partnership debts save for his original investment, is not thought to be an 'owner' of partnership property, and does not manage the business may distinguish him from general partners but strengthens his resemblance to the stockholder; and even as to his preference in dissolution, he resembles the preferred stockholder. Indeed, it makes considerably greater sense to clothe the instant appellants with whatever descriptive phrase is necessary to enable them to sue on behalf of the partnership than to entertain derivative suits by persons owning a

few shares in giant corporations, especially if the shares are non-participating redeemable preferred. . . ."

The New York Produce Exchange had contended that § 115 of the partnership law of the State of New York proscribed such suits by limited partners. Section 115 of the New York law is identical to § 26 of the Maryland statute. Judge Friendly, for the court, answered that argument by stating:

". . . In reading the language [of § 115] we must remember that 'Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed,' *Griffiths v. Helvering,* 308 U.S. 335, 355, 60 S.Ct. 277, 278, 84 L.Ed. 319 (1939). The purposes of § 115 . . . were reasonably plain. General partners need not join limited partners in an action by the partnership; ordinarily limited partners may not sue since this will interfere with the management by the general partners. *Lieberman v. Atlantic Mutual Ins. Co., [supra]*; a suitor against the partnership need not join a limited partner; . . . The words say all this and say it well. *But they do not have to be read as saying that a limited partner cannot bring an action on behalf of the partnership when the general partners have disabled themselves or wrongfully refused; and although they could be so read, we see no sufficient reason for doing so when in quite similar situations the cestui que trust or the preferred stockholder is allowed to do exactly that. . . ."* [11] (Emphasis supplied). 344 F. 2d at 298.

The court went on to state that before the limited partners

---

11. That corporate derivative or representative suits may be maintained in this State is beyond question. *See* Parish v. Milk Producers Ass'n, 250 Md. 24, 242 A. 2d 512 (1968); *appeal after remand,* 261 Md. 618, 277 A. 2d 19 (1971); *cert. denied,* 404 U. S. 940, 92 S. Ct. 280, 30 L.Ed.2d 253 (1971); Eisler v. Eastern States Corporation, 182 Md. 329, 35 A. 2d 118 (1943); Mottu v. Primrose, 23 Md. 482 (1865). *See generally* 2 G. Hornstein, *Corporation Law and Practice* § 711 (1959).

could bring an action on the partnership's behalf against the general partner for the partner's wilful failure to sue or his disqualification, there must be "strong allegations and proof." The opinion makes clear that mere differences of opinion over questions of business judgment are an insufficient basis for intervention by the limited partners.

The Court of Appeals of New York in *Lichtyger v. Franchard Corporation*, 18 N.Y.2d 528, 223 N.E.2d 869, 277 N.Y.S.2d 377 (1966) said:

> "We think it would be inconsistent with the dormant role of limited partners under our statute if they were permitted to interfere or effect a rescission of any commercial dealings which the partnership had with third parties who were not acting in concert or collusion with the wrongdoing general partners and who had no knowledge of such wrongdoing." 18 N.Y.2d at 537-38.

Perspicuously implicit in the holding of *Lichtyger, supra,* is the antithesis of that holding, *videlicit,* it is not inconsistent with the dormant role of limited partners to interfere with or effect a rescission of any commercial dealing which the partnership had with third parties, who were knowingly acting in concert or collusion with the wrongdoing general partner, to the detriment of the limited partnership.

The New York Court of Appeals on the same day that it decided *Lichtyger, supra,* also handed down an opinion in *Riviera Congress Associates v. Yassky,* 18 N.Y.2d 540, 223 N.E.2d 876, 277 N.Y.S.2d 386 (1966). The court there allowed limited partners to maintain a derivative action against both the general partner and a third party. In that case the general partners had formed a separate partnership and leased the limited partnership's property to the general partner's separate partnership. When the separate partnership failed to pay rent, the general partners refused to sue for its collection because they would, in effect, be suing themselves. The court in disposing of the matter said:

> "Since its general partners will not sue because

they are the very persons who would be liable for payment of the rent, the limited partners, as *cestuis que trustent,* should be permitted to initiate the necessary legal proceedings. . . ." [12] 18 N.Y.2d at 548.

We are persuaded that the reasoning of the New York courts, both Federal and State, is more sound and equitable than that of Delaware, Washington and Florida. We follow the rationale of the New York cases, and we hold that limited partners may intervene in a commercial transaction, such as a deed of trust foreclosure, when there are strong allegations and proof that the third party has wrongfully acted in concert and collusion with the general partner to the detriment of the limited partnership. In so holding, we do not here decide, nor are we to be construed as remotely indicating any opinion whatsoever concerning the issue of whether the bringing of suit would, *ipso facto,* convert the partners to general partners and hence render them directly liable to creditors under ULPA, § 7.[13]

We vacate the order of the circuit court granting the appellees' motion to dismiss appellants' exception, and remand the case for further proceedings. The chancellor shall determine whether there are "strong allegations and proof" of collusion between the trustees and the general partner, or whether the interest of the general partner in protecting his own financial welfare is so in conflict with the interest of the limited partnership as to render the general partner "disqualified." In order to determine whether the allegations are "strong", and if so, whether supported by strong "proof", the chancellor may conduct, if he deems it necessary, an evidentiary hearing relative thereto.

---

12. The New York statute was amended in 1968 so as to provide legislatively what had been judicially determined, and to provide appropriate safeguards against possible abuse of the limited partner's right to bring a derivative suit.

13. *Compare* Riviera Congress Associates v. Yassky, *supra,* *with* Executive Hotel Associates v. Elm Hotel Corp., 41 Misc. 2d 354, 245 N.Y.S.2d 929 (Civ. Ct.), *aff'd mem.,* 43 Misc. 2d 153, 250 N.Y.S.2d 351 (App. T. 1964). The problem is discussed in Comment, 40 N.Y.U. L.Rev. 1174, 1178-79 (1965).

We affirm, however, the ruling of the circuit court with respect to the granting of the appellees' motion raising preliminary objection in the injunction case. We do so because the sought injunction was but a duplication of the relief asked by the appellants through their exceptions filed in the foreclosure proceedings. Appellants, having but one wound, are entitled to but one balm.

> *Order of dismissal in Appeal No. 1114 vacated and case remanded for further proceedings.*
>
> *Order in Appeal No. 1029 affirmed.*
>
> *Costs to be paid one-half by appellants and one-half by appellee.*