HOWARD H. MISHKIN ET AL. *v.* RONALD WILLONER AND JACOB SHEESKIN, TRUSTEES ET AL.

[No. 875, September Term, 1976.]

*Decided May 16, 1977.*

112

The cause was argued before THOMPSON, MENCHINE and LOWE, JJ.

*Sheldon H. Braiterman* and *James D. Johnson* for appellants.

*Lance W. Billingsley*, with whom were *Meyers & Billingsley, P.A.* and *William C. Brennan, Jr.*, with whom were *DePaul, Willoner & Kenkel, P.A.* on the brief, for appellees Ronald Willoner and Jacob Sheeskin. *Robert A. Klein*, with whom were *Danzansky, Dickey, Tydings, Quint & Gordon* on the brief, for other appellee.

MENCHINE, J., delivered the opinion of the Court.

This is *McCully v. Radack*, 27 Md. App. 350, 340 A. 2d 374 (1975), revisited, but now entitled *Mishkin, et al. v. Willoner and Sheeskin, Trustees.*[1]

---

[1] The appellants, all Class A limited partners in West River Marina, Limited Partnership, are: Howard Mishkin, Abraham Karr, Melvin Beall, John E. Harms, Edward S. Kallins, Earl V. Wilkinson, Harold Silver, James R. McCully, Vincent Pirro, Chris Papadopoulos and Naron, Wagner & Voslow, Chartered. The appellees are Ronald Willoner and Jacob Sheeskin, Trustees under a deed of trust executed by West River Marina, Limited Partnership and David H. Radack, general partner of the limited

At issue in *McCully* was the standing of limited partners, alleging collusion between a general partner and the trustees for a third party detrimental to a limited partnership, to intervene in deed of trust proceedings to foreclose upon property of the limited partnership. We vacated the trial court's order denying standing to the limited partners and remanded the case for further proceedings. We thus explicated the course to be followed on remand:

> "We vacate the order of the circuit court granting the appellees' motion to dismiss appellants' exception, and remand the case for further proceedings. The chancellor shall determine whether there are 'strong allegations and proof' of collusion between the trustees and the general partner, or whether the interest of the general partner in protecting his own financial welfare is so in conflict with the interest of the limited partnership as to render the general partner 'disqualified.' In order to determine whether the allegations are 'strong', and if so, whether supported by strong 'proof', the chancellor may conduct, if he deems it necessary, an evidentiary hearing relative thereto." 27 Md. App. at 360, 340 A. 2d at 380.

On remand, the limited partners offered numerous witnesses in person or by deposition in the course of a hearing conducted over a three day period. At the close of the evidence presented by the limited partners, motions to dismiss were made and were granted by the chancellor.[2]

Thereafter the following orders were passed:

1. Dated April 27, 1976, reading as follows:

> "Testimony taken     At the end of the Plaintiffs case   the Trustees moved to dismiss the issue of

---

partnership. The capital structure of the limited partnership was as follows: the general partner contributed $70,000.00; the limited partners contributed $230,000.00 (about $21,000.00 each).

2. Authorized by Maryland Rule 535.

collusion. Motion granted. The General Partner moved to dismiss the issue that he had disqualified himself. Motion granted."

2. Dated May 17, 1976, reading as follows:

"ORDERED that the Decrees of this Court dated April 27, 1976 granting the motions to dismiss the issues delineated by the Court of Special Appeals be, and they are hereby, suspended until such time as the exceptions to the Report of the Auditor filed by the West River Marina Limited Partnership are either heard and decided by this Court or withdrawn by the General Partner."

3. Dated June 9, 1976, reading as follows:

"ADJUDGED, ORDERED, and DECREED: That the General Partner be, and he is hereby, granted leave to withdraw the Exceptions to the Auditor's Report; and

That the Decree dated 17 May 1976 and filed 18 May 1976 be, and it is hereby, vacated."

We hasten to explain the necessity for the passage of three orders in the case.

In *McCully, supra,* we noted that the issue of the standing of the limited partners arose in connection with the propriety of a proposed settlement acceptable to the general partner but alleged to be detrimental to the limited partnership. Under the proposed settlement the limited partnership would have received the sum of $46,646.69 [3] as an agreed net surplus due the limited partnership from the foreclosure sale. The general partner, in turn, agreed to the withdrawal of exceptions to the auditor's report that had shown a net surplus of $20,822.21.

During the course of the trial on remand it became apparent that the initial offer and acceptance of the

---

**3.** This sum would have been sufficient to pay all general creditors of the partnership but would admit of little or no distribution to the limited partners.

proposed settlement of the dispute between trustees and the limited partnership had not been formally consummated. Indeed, there was doubt that such a compromise was a continuing or subsisting possibility.

Accordingly, subsequent to the passage of the order of April 27, 1976, the appellants filed a petition directing the attention of the court to this circumstance and pointed out, *inter alia,* (a) that exceptions to the auditor's report had not been withdrawn; (b) that the settlement offer of approximately $26,000.00 more than the surplus shown by the auditor's report was of doubtful continuing effect; and (c) that, absent such an offer, a withdrawal by the general partner of exceptions to the auditor's report would be "void and unenforceable for lack of consideration." The petition further pointed out that in the absence of offer, acceptance and withdrawal of the exceptions to the auditor's report, a hearing upon such exceptions must follow. In the latter case, the petition suggested, the dispute between the general partner on the one hand and the limited partners on the other, would be moot.

The chancellor then passed the suspending order of May 17, 1976.

Thereafter, however, the offer of $46,669.00 to the West River Marina Limited Partnership was formally repeated; was accepted by the general partner on behalf of the partnership; and the general partner was authorized to withdraw the exceptions to the auditor's report.

On June 9, 1976, the suspension order of May 17, 1976, was vacated and the order of April 27, 1976, thereby effectively restored.

The limited partners have appealed to this Court asking:

"Does the evidence, taken in the light most favorable to Appellants, demonstrate collusion between the Trustees and the general partner or

that the interest of the general partner in protecting his own financial interest is in conflict with the interest of the partnership so as to render him disqualified from pursuing the partnership litigation?'"

## COLLUSION

The chancellor found that "[t]here are certainly strong allegations but in my opinion the amount of proof is nil of collusion between the trustees and the general partner."

### *The Law*

In this appeal we are required carefully to examine the evidence from the viewpoint most favorable to the appellants, and to do so in the light of the circumstance that the relationship of the general partner with the limited partners is a fiduciary one. In *Allen v. Steinberg*, 244 Md. 119, 128, 223 A. 2d 240, 246 (1966), Chief Judge Hammond, speaking for the Court of Appeals, said:·

"Further, the partnership relationship is a fiduciary one, a relation of trust. A partner is a trustee to the extent that his duties bind him, a cestui que trust as far as the duties that rest on his copartners. 1 Rowley, *Modern Law of Partnership*, §§ 341-42; *Restatement, Restitution* §§ 166 comment d, 190 comment a; 68 C. J. S. *Partnership* § 76; 40 Am. Jur. *Partnership* § 128; *Hagan v. Dundore,* 187 Md. 430. These authorities which consider the matter also hold that generally the principle of utmost good faith covers not only dealings and transactions occurring during the partnership but also those taking place during the negotiations leading to the formation of the partnership. See also *Knapp v. First National Bank and Trust Co.* (10th Cir.), 154 F. 2d 395, 398; *Stephens v. Stephens* (Ky.), 183 S. W. 2d 822, 824. Managing partners particularly owe a fiduciary

duty to inactive partners. *Corr v. Hoffman* (N. Y.), 176 N. E. 383; *Einsweiler v. Einsweiler* (Ill.), 61 N. E. 2d 377."

Judge Digges, specially assigned, speaking for this Court in *Green v. Lombard*, 28 Md. App. 1, 343 A. 2d 905 (1975), *cert. denied*, 276 Md. 743 (1975), declared at 12 [913]:

"Fraud is a generic term and in equity embraces 'all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' 1 *Story, Equity Jurisprudence*, § 187 (6th ed. 1853). It is not necessarily a single fact but a conclusion which is drawn from all the circumstances of the case, *Brogden v. Walker's Ex'r*, 2 Harr & J. 285 (1805), and includes constructive as well as actual fraud. *Mead v. Gilbert*, 170 Md. 592, 606, 185 A. 668 (1936). It taints and vitiates all that it touches. *Figinski v. Modrak*, 151 Md. 140, 146, 134 A. 130 (1926)."

### The Evidence

There is not the slightest direct evidence of collusion between Radack, the general partner, and the trustees or the *cestui que trust* under the deed of trust. We are not permitted, however, to end our consideration of the issue with such a statement.

We must as well compare the settlement surplus figure — $46,669.00 — with the appllants' claimed surplus figure — about $100,000.00 — and examine the evidence relating to calculation of the latter figure. We then must consider whether that comparison and that examination reasonably would permit a conclusion that strong proof of collusion inferentially has been shown.

The auditor's report had shown trustees' receipts of foreclosure purchase price, interest and tax refund totaling

$859,363.92.[4] The report recommended disbursements as follows:

| | | |
|---|---|---|
| To mortgagee, principal and interest | $787,376.90 | |
| To expenses of sale including Trustees Commissions and Counsel Fee | 51,104.81 | $838,481.71 |
| Surplus to Limited Partnership | | $ 20,882.21 |

The exceptions [5] filed on behalf of the limited partnership alleged the following errors in the report:

| | |
|---|---|
| 1. Failure to allow mortgagor credit on marina earnings between date of sale and date of settlement | $3,589.03 |
| 2. Errors in calculations of claim of mortgagee | Amount not asserted |
| 3. Erroneous allowance of interest after date of closing | Amount not asserted |
| 4. Alternatively, that interest after date of closing was based on excessive principal amount | Amount not asserted |
| 5. Alternatively, failure to allow credit against interest for investment, if any, by Trustees pending ratification of report | Amount not asserted |
| 6. Erroneous allowance of counsel fee | $39,036.51 |
| 7. Other and further reasons | Amount not asserted |

---

4. The purchasers at foreclosure were John E. Harms and Vincent Pirro, two of the limited partners, who are among the appellants.

5. Separate exceptions, filed by the general partner for the limited partnership, asserted a right to an escrow account of $17,000. The monies in that account are not part of the trust estate. The present litigation is in no manner concerned with resolution of any dispute concerning that sum.

The witness Harold Rosenblatt, a certified public accountant,[6] testified that "the errors in the report of the auditor were sixty-five thousand eight hundred and eighty-four dollars plus interest, and the attorney's fees which may be disallowed." He supplemented his testimony with an accounting document that delineated the suggested errors as follows:

*"ERRORS IN REPORT OF AUDITOR*

*AMOUNT OF ERROR*

1. Deed of Trust Statement of Debt furnished auditor erroneously charged Partnership with advances on obligations solely the responsibility of the deed of trust holder $ 6,884.69

2. Auditor erroneously added interest of $6,646.69 after date of settlement (5/22/74). 6,646.69

3. Deed of Trust Statement of Debt furnished auditor failed to recognize $48,416.40 pecuniary benefit flowing to Deed of Trust Holder. 48,416.00

4. Limited Partners contest the amount of attorney's fee, but do not deduct same herein, since this is a legal and not an accounting dispute.

5. Auditor fails to credit Partnership with income of Marina to 5/22/74. 3,589.03

TOTAL: $65,884.43"

6. The witness also owned a one-fourth share of the limited partner Naron, Wagner & Voslow, Chartered.

Plus: (6) Interest and (added to
       document during hear-
       ing)                           (Amount not listed)
     (7) Any attorney's fees dis-
         allowed                       (Amount not listed)

Other witnesses who contended that the auditor's report was erroneous did so substantially on the basis of the Rosenblatt testimony and accounting.

Items 5 and 7 in the Rosenblatt accounting, *supra,* quickly can be shown to lend no support to appellants' claim of collusion.

As to item 5 — $3,589.03 — it is conceded that the chancellor found that the *purchasers* at foreclosure were entitled to that sum. Thus it reflects in no way upon the present issue.

As to item 7 — $39,036.51 — we think that *Mortgage Investors of Washington v. Citizens Bank and Trust Company of Maryland,* 278 Md. 505, 366 A. 2d 47 (1976), is dispositive. The attorney's fee claimed and allowed was fixed in the deed of trust and agreed upon by the limited partnership at its execution. The fee was not shown to be unlawful. There was no showing that the fee was tainted by any of the exceptions to the general rule that parties have the right to make contracts and the courts the duty to maintain them in their integrity and entirety. In other words, there was no showing: (a) that the attorney personally was the holder of the document of indebtedness; (b) that the amount designated was grossly in excess of any reasonable amount, or (c) that the fee was in fact payable to the creditor rather than to counsel. *See Mortgage Investors, supra,* at 508-09 [49-50].

Item 3 — $48,416.00 — stems from a contention by appellants that this sum should have been deducted from the principal sum due the *cestui que trust* in that it represented his obligation rather than the obligation of the limited partnership. The sum represented future payments required to be made upon equipment utilized in connection with operation of the marina. The nature of the documents

under which such payments for equipment are required to be made does not appear in this record. Apparently the validity of the exception depends upon the answer to the question whether the possessory documents evidencing the equipment transactions were leases or conditional sales agreements. Whether they were in fact leases or conditional sales agreements is a matter of the purest conjecture under the evidence produced below.

In any case, the record shows that the general partner, acting upon the advice of counsel, concluded that this exception would not be sustained. There is no evidence that the general partner's position as to this was a product of collusion with the trustees or their *cestui que trust*.

Item 1 — $6,884.00 — related to allowances to the *cestui que trust* for payments made upon equipment obligations during the short lived operation of the marina by the limited partnership. The same lack of evidence to support this claim exists as was the case with respect to item 3. The merit of the claim is left to conjecture.

Item 2 — $6,646.69 — was admittedly a legal conclusion of counsel for the limited partners. The general partner, again relying upon the advice of counsel, reached the conclusion that the claim was without merit.

It is apparent from the above that the validity of all exceptions has been put in question. There is no direct evidence that their validity was questioned because of collusion of the general partner with the trustees or the *cestui que trust*. Neither do we find any evidence in this record from which such collusion reasonably may be inferred.

We find, in sum, no "strong proof" of collusion. *McCully v. Radack, supra.*

## CONFLICT OF INTEREST

The Maryland Uniform Limited Partnership Act, Corporations and Associations Article § 10-101, *et seq.*, itself supplies a built-in conflict between a general and a limited partner when the circumstances are such that

dissolution appears imminent and partnership assets are insufficient in amount both to pay partnership debts and to provide a return of limited partners' contributions. This is so: (1) because the general partner alone personally is subject to liability for partnership debts, § 10-108, while the limited partner is not, § 10-101, and (2) because the general partner's claim to return of capital contributions is subordinate to the claim of a limited partner, § 10-122.

We do not, however, interpret the combined effect of §§ 10-101, 10-108 and 10-122 to mean that the broad managerial powers conferred upon the general partner of a limited partnership by § 10-108 are *per se* lessened when dissolution of the limited partnership appears imminent.

In the subject case it is true that the general partner — not the limited partners — would be legally liable to the *creditors* of the partnership and that the settlement assured the payment of all partnership debts and thus would militate to his advantage.

But, it is equally true that the exceptions could be pursued by the limited partners without threat of *increased* personal liability attaching to them if unsuccessfully litigated. The limited partners could, in short, possibly *gain* from a successful prosecution of the exceptions but *could not lose* if the exceptions were not sustained at all or were partially sustained in such a way that a surplus less than $46,669.00 resulted from their disposition.

The general creditors of the partnership would not find themselves in so favorable a tactical position. True, they would be paid in full if the settlement is approved or if the exceptions were sustained in such fashion that the surplus exceeded the settlement amount. On the other hand, if the exceptions were to be overruled or produced a surplus less than $46,000.00, creditors would be left to pursue their rights against the general partner [7] alone. § 10-108.

Thus it appears the statute imposes a conflict placing a tight shoe on the foot of both general and limited partners in

---

7. The evidence showed that Radack, the general partner, at the time of hearing had personal assets of $2,500.00 to $3,000.00 and personal liabilities of $20,000.00 to $25,000.00.

circumstances when dissolution is imminent and partnership assets are insufficient for payment of debts and return of capital investment. In such a case we search for evidence that may provide indicia of good or bad faith in the course followed by the general partner.

The record shows that the general partner agreed to forego the proffered settlement and to proceed to litigate the exceptions "if the limited partners would guarantee at least the settlement of forty-six thousand dollars." The limited partners declined to do so. We recognize, of course, that the limited partners were in no way legally obligated to assume any added burden. Nonetheless, we think these circumstances negate any inference that the course followed by the general partner was undertaken in bad faith.

We see no evidence of any conflict of interest other than is inherent in the statutory scheme for limited partnerships. We think there is no strong "proof" that the agreement was a product of the general partner's self-interest or that acceptance of it was detrimental to the partnership entity. *McCully v. Radack, supra.*

*Judgment affirmed.*
*Costs to be paid by appellants.*