498 A.2d 1198

**John C. WALKER, III and John W. Gill, Jr., Substitute Trustees**

v.

**Henry HAYWOOD, et ux.**

**No. 1481, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Oct. 18, 1985.

Samuel S.D. Marsh, Bethesda (F. Robert Troll, Jr. and Ross, Marsh & Foster, Bethesda, on brief), for appellants.

No brief or appearance for appellees.

Argued before BISHOP, ADKINS and KARWACKI, JJ.

ADKINS, Judge.

This is an appeal from the ratification of an auditor's report disallowing in part attorney's fees and certain other expenses incurred in connection with the foreclosure of a deed of trust and related bankruptcy proceedings. Appellants charge that the disallowance, or most of it, was the consequence of two court policies that were in fact unauthorized rules of court improperly applied. While we agree that the trial judge misapplied the policies and reverse, we disagree with appellants on the rule of court question.

## I. *Background*

Appellants John C. Walker, III, and John W. Gill, Jr., are substitute trustees under a deed of trust executed by appellees Henry and Georgia M. Haywood. The noteholder is appellant National Permanent Bank, F.S.B. In 1983 the Haywoods defaulted under the note secured by the deed of trust and promptly filed a Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the District of Maryland. National Permanent engaged counsel to protect its interest in the bankruptcy and to obtain relief from the automatic stay against lien enforcement imposed by 11 U.S.C. § 362(a). The latter objective was achieved on March 14, 1984, when the bankruptcy court lifted the automatic stay and authorized National Permanent to institute foreclosure proceedings.

Foreclosure was forthwith sought in the Circuit Court for Prince George's County and the property subject to the deed of trust was sold in due course. The sale was ratified on June 21, 1984, and the case referred to the auditor. Appellants submitted to the auditor a proposed account that requested, among other items, allowance for the following:

| 1. | Attorney's fees for services rendered in the foreclosure proceeding | | $ 900.00 |
|---|---|---|---|
| 2. | Advances paid by Permanent in connection with the bankruptcy proceeding | | |
| | attorney's fees | $1,225.00 | |
| | title search | 125.00 | |
| | appraisal fee | 150.00 | |
| | telephone and postage | 20.00 | |
| | | | 1,520.00 |
| 3. | Interest on advance | | 53.79 |
| | | | $2,473.79 |

The auditor allowed only $750 for item 1—the attorney's fees in the foreclosure. This action was pursuant to a policy we shall shortly discuss. Pursuant to another policy, he allowed only $500 of the $1,225 attorney's fees claimed in item 2—advances in connection with the bankruptcy case. In item 2 he also disallowed the $125 title search fee and the $20 telephone and postage expense. And he rejected all of item 3 for reasons not disclosed in the record. Thus, appellants ended up with $1,073.79 less than they had claimed. The amended audit showed a surplus of $27,589.37 after deduction of all claims allowed.

Appellant excepted. Md.Rule 2–543(f). A hearing was had pursuant to Rule 2–543(g). In addition to producing evidence about the policies that had guided the auditor, appellants introduced extensive testimony as to the reasonableness and propriety of the fees and other sums disallowed. They also requested allowance of fees and expenses incurred in connection with the exceptions. Appellee Henry Haywood was at the hearing but in no way attempted to contradict the evidence or to oppose appellants' contentions. On October 18, 1984, the court overruled the exceptions and ratified and confirmed the audit because it was "of the

opinion and persuasion that the amended [audit] conforms in all respects to the established, current policies of this Court...."

## II. *Appellants' Contentions*

Appellants advance a number of reasons to support their assertion that the trial court erred. These may be summarized as follows:

1. Neither a judicial circuit nor a circuit court has authority to adopt a policy that is in effect a court rule and that limits attorney's fees to a fixed hourly rate in all foreclosure proceedings.

2. When a deed of trust provides that all foreclosure expenses, including attorney's fees are secured by the lien thereof, the circuit court may neither

    a. enforce a policy prescribing a predetermined hourly rate for attorney's fees that is less than the prevailing community rate, nor

    b. disallow all such expenses incurred by the noteholder subsequent to the filing of the auditor's amended report.

3. Neither a judicial circuit nor a circuit court has authority to adopt a policy that is in effect a court rule and that limits attorney's fees in bankruptcy proceedings to a predetermined amount.

4. When a deed of trust provides that all litigation expenses, including attorney's fees, are secured by the lien thereof, the circuit court may neither

    a. enforce a policy prescribing a $500 limit for attorney's fees incurred by the noteholder in a bankruptcy proceeding, nor

    b. disallow other ordinary and necessary expenses incurred by the noteholder for the protection of its interests in the bankruptcy proceedings.

5. When a deed of trust provides for interest on an advance made by the noteholder pursuant to the terms

thereof the court may not disallow interest claimed by the noteholder on the advance.

We shall address these contentions *seriatim.*

### III. *The Policy as to Attorneys' Fees in Foreclosure Proceedings*

At the hearing on exceptions to the audit, court auditor John Middleton described the unwritten policy to which appellants object as

> such that routine regular attorney's fees, without any specific court order, are limited to $750 for work done in this court ... in foreclosure.

According to Mr. Middleton, the policy

> is based upon a judicial recognition that the average amount of work in a foreclosure case will not exceed ten hours, and the allowance for the work done is the rate of no more than $75 an hour. Ten times $75 is $750.

It is this policy that appellants claim is a rule of court and one that neither the Seventh Judicial Circuit nor the Circuit Court for Prince George's County had authority to adopt.

"The power of courts other than the Court of Appeals to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Court of Appeals or otherwise by law." Md.Const., Art. IV, § 18(a). Moreover, "... courts [other than the District Court] may make ... rules of practice and procedure subject to and not inconsistent with any rule of the Court of Appeals" and such rules generally must "be adopted pursuant to the limitations and procedures prescribed by the Maryland Rules, unless authority to adopt rules is expressly granted by public general law." Courts and Judicial Proceedings Art., § 1–201(b). Since there is no public general law expressly granting rule-making power to the Seventh Judicial Circuit or to the Circuit Court for Prince George's County, we must look to the rules adopted by the Court of Appeals with respect to local rule-making.

For present purposes, our search need not encompass the entire history of this subject in Maryland. We place the topic in perspective by turning to former Md.Rule 1.f., adopted by Rules Order of July 18, 1956, effective January 1, 1957. That rule, supplanting earlier statutory and rule provisions, permitted the "judges of the several [circuit] courts and, in Baltimore City, the Supreme Bench of Baltimore City," to adopt rules of practice and procedure "not inconsistent with any general rules adopted by the Court of Appeals or with any statute then in force." Md.Code Ann. (1957 Cum.Supp.). Former Rule 1.f., it will be observed, did not limit the subject matter of local rules (except to the extent that they had to be rules of practice and procedure) nor did it prescribe any method by which local rules had to be adopted or published.

A significant change in these arrangements was produced by a Rules Order of February 10, 1969, effective April 1, 1969. By that order Rule 1.f. was amended to abolish local (county) rules, but to permit "circuit-wide rules" adopted "by action of a majority of the judges of the judicial circuit concerned." The circuit rules were to "have a numbering system and arrangement consistent with the system and arrangement of the Maryland Rules...." Upon adoption by a circuit, they were to "be forwarded to the Court of Appeals and to the Director of the Administrative Office of the Courts." The Court of Appeals had power "to modify or abrogate [any such] rule." The Director of the Administrative Office was required to publish them. A Rules Committee note indicates that these procedures were intended to reduce the "number of varying and sometimes confusing practices now existing in different jurisdictions" and to assure ready availability of circuit rules through the publication mechanism. Md.Code Ann.Vol. 9B (1971). This provision, like its predecessor, did not limit subject areas for circuit rules. It did eliminate local or county rules and require that any circuit rule be adopted by a majority of the judges of the circuit. Since the rules had to be forwarded to the Court of Appeals and to the Director of the Adminis-

trative Office, they had to be in writing. And their publication was required.

Matters continued under this dispensation until another major amendment of Rule 1.f. by Rules Orders of October 1, 1980, and December 24, 1980, both effective January 1, 1981. The new rule 1.f. rescinded all circuit and local rules in effect on December 31, 1980, except for those dealing with six enumerated subject areas. It once again permitted the adoption of local or county rules as well as circuit rules, but only in one or more of the designated areas. The former provisions as to method of adoption of rules, forwarding to the Court of Appeals, and publication of rules were dropped. Md.Code Ann., Maryland Rules (1983). The 1981 version of Rule 1.f. on July 1, 1984, became current Md.Rule 1–102 without substantive change, except that the permitted subject areas for local or circuit rule-making were reduced from six to five.

Md.Rule 1–102 provides:

Unless inconsistent with these rules, circuit and local rules regulating (1) court libraries, (2) memorial proceedings, (3) *auditors*, (4) compensation of trustees in judicial sales, and (5) appointment of bail bond commissioners ..., are not repealed. No circuit and local rules, other than ones regulating the matters and subjects listed in this Rule, shall be adopted [emphasis supplied].

Appellants aver that the policy they view as a rule falls afoul of these provisions because the policy or rule is a limitation on attorney's fees—an area in which circuits and circuit courts are not empowered to act. We do not see it that way. The policy may be seen as a regulation of the auditor's conduct—a direction to the auditor that in routine foreclosure proceedings he may not allow fees in excess of $750 absent an order of court. So read, the policy relates to auditors, a matter within the local and circuit rule-making authority. Nor is it an absolute ceiling on fees. In appropriate circumstances, greater fees may be allowed by a "specific court order" as Mr. Middleton explained when

describing the policy. But the basic problem with appellants' argument on this point is that the policy, so far as the record before us discloses, was not adopted as a rule.[1]

As we have seen, neither present Rule 1–102 nor the immediately-preceding version of former Rule 1.f. contain any express provisions as to how local or circuit rules are to be adopted. We reject appellants' suggestion that the publication provisions of Md.Rule 1225 c apply to local or circuit rules. It may well be that sound policy supports the publication of local and circuit rules. Weinstein, *Reform of Federal Court Rulemaking Procedure,* 76 Col.L.Rev. 905, *ABA Standards Relating to Court Organization,* § 1.32 p. 73 (1974), and Roney, "The Bar Answers the Challenge," 62 ABAJ 60, 64 (1976). *And see Fullerton v. Bank of the United States,* 1 Pet. 612, 613, 26 U.S. 604, 7 L.Ed. 280 (1828) ("Written rules are unquestionably to be preferred, because their commencement, and their action, and their meaning, are most conveniently determined...."). But Md. Rule 1225, like its predecessor, former Rule 4, by its very terms applies only to the Court of Appeals.[2]

Nevertheless, we think that at the very least a local or circuit rule must be adopted by a formal order concurred in by a majority of the judges of the circuit court or circuit involved. That was the practice of most, if not all, circuit

---

**1.** In 1971 the Seventh Judicial Circuit adopted circuit rules pursuant to the procedure prescribed by the 1969–1980 provisions of former Md.Rule 1.f. Circuit Rule 595 deals with a court auditor, but does not address or include the policy at issue in this case. We have been referred to no more recent version of that rule.

**2.** Section 7–206(a)(2)(iii) of the State Govt. Art. requires the *Maryland Register* to contain "each rule of court that the Court of Appeals adopts or permits to be adopted...." Section 10–501(i)(1) of that Article includes in the definition of "quasi-legislative function" the "adopting, disapproving, amending, or repealing [of] a rule, regulation, or bylaw that has the force of law, *including a rule of a court*" [emphasis supplied] thereby bringing that procedure within the scope of the open meetings law. It could be argued that those provisions apply to local and circuit rule-making. It has not been so argued in this case, either below or before us, so we do not address the issue. Md.Rule 1085.

courts prior to the 1969 version of Rule 1.f. It was also the practice of the Court of Appeals prior to the adoption of Rule 4. That procedure serves to establish the provisions of the rule in question beyond cavil, sets the effective date of the rule and evidences the fact of its adoption. It also facilitates appropriate publication of the rule. Whether or not publication is a *sine qua non* of local rule-making (*see* note 2, *supra*) it is clearly good practice. Weinstein, *supra,* 76 Col.L.Rev. 907, 963–64 (1978). The record before us discloses virtually nothing as to any procedure used when the purported rule was allegedly adopted.

As we have noted, the policy in question here was unwritten. According to Mr. Middleton, it was established "[b]y Judge Meloy during his tenure on the bench ... at least seven years" prior to the October 1984 hearing on the exceptions.[3] It was "continued under the two judges who have succeeded him in his work with respect to the liaison for auditing matters." This tells us of a policy adopted by at most three individual judges of the (in 1984) fourteen-judge Circuit Court for Prince George's County. Whether a majority of that bench or a majority of the then-eighteen judges of the Seventh Judicial Circuit even adopted or ratified the policy or rule does not appear on the record. While it is true that the testimony contains occasional references to a "court policy" there is no evidence as to when or how the court approved it. The closest we come to that is a comment by the hearing judge that "within the last ... two or three months" the Seventh Circuit Judicial Conference ratified the $75 an hour rate for fees. But this speaks only to the hourly rate; it says nothing of the $750 alleged ceiling or of the other aspects of the policy as explained by Mr. Middleton. There is simply not enough before us to permit us to conclude that the policy was adopted as a rule either of the Seventh Judicial Circuit or of the Circuit Court for Prince George's County.

---

**3.** The Hon. Samuel W.H. Meloy was an associate judge of the Seventh Judicial Circuit from July 9, 1965, until November 4, 1981.

Appellants seek to overcome this difficulty by asserting that "a settled practice adhered to for many years and well known constitutes a rule...." *Detroit Heating and Lighting Co. v. Kemp*, 182 F. 847 (C.C.D.Md.1910). *See also Patton v. Evans*, 92 Utah 524, 69 P.2d 969, 970 (1937). This may well be true, although we certainly do not suggest that courts may evade the strictures on local and circuit rulemaking by informally adopting policies which are in fact rules.[4] It may also be true that the policy before us has been "adhered to for many years"—seven years at least. But there is no indication in the record as to how "well known" it is. And in any case, for the reasons we have just explained, there is nothing in the record before us to indicate that it is a court policy that might achieve status as

---

**4.** By the same token, we do not suggest that local courts are without power to adopt policies that do not rise to the level of rules. The word "policy" covers a broad spectrum of concepts. It may mean a statement of general "principles upon which any measure or course of action is based," *New Webster's Encyclopedia Dictionary of the English Language* (Consolidated Book Publishers, 1952) (*e.g.,* "The policy of this court is to administer justice"). It may have the narrower meaning of "the management of an affair in certain circumstances." *Id.* We are dealing here with the latter notion. In the field of court administration, there is a tendency to speak of "administrative policy" as relating to such matters as "court calendars, assignment of judges, responsibilities of court auxiliary personnel, administrative procedures, and financial administration." *ABA Standards Relating to Court Organization,* § 1.32, p. 77 (1974). These are viewed as matters essentially internal to the courts, as opposed to rules of procedure that have a broader reach. *Id.,* p. 78. *Compare* the APA exclusion of "internal management" statements from the definition of "regulation." State Govt. Art. § 10–101(e)(2). *And see* Weinstein, 76 Col.L.Rev. 907 n. 1. The distinction between "rule" and "policy," like the distinction between "substance" and "procedure" is not a clear one. *ABA Standards,* §§ 1.31, p. 74 and 1.32, p. 78. In this case we need not attempt to define it. We do note, however, that the Maryland Rules authorize the local adoption of policies and procedures to implement provisions of the rules. *See,* by way of illustration and not by way of limitation, Rules 1200 (Administrative Responsibility), 1201 (Chambers Judge), 1202 (Assignment of Judges), 1210 (Motion Day-Calendar), 1211 (Assignment of Actions for Trial), and 1224 (Administration of Circuit Court Reporters). When such policies or procedures are adopted, it would seem at least prudent to put them in writing and to publish them in a manner likely to bring them to the attention of those to be effected by them.

a rule. *See Fullerton,* 1 Pet. at 613, and *Payne v. Garth,* 285 F. 301 (8th Cir.1922).

■ We hold, therefore, that the policy in question is neither a rule nor a court policy. It is no more than a policy adopted by Judge Meloy and, apparently, two other judges. As such, it was not binding on the judge who heard the exceptions to the audit. In any case, as we shall now explain, the hearing judge misapplied the policy.

### IV. *Disallowance of Attorney's Fees and Other Foreclosure Expenses Provided for in Deed of Trust*

As we noted early on, the hearing judge rejected appellants' exceptions as to attorney's fees in the foreclosure. By doing so, he disallowed $150 of the $900 claimed for those services. He also disallowed similar expenses claimed by appellants for work in connection with the exceptions. The exceptions referred to those expenses, and proof of them was submitted at the exceptions hearing.[5] The judge did so because he thought the amended audit "conforms in all respects to the established, current policies of this Court." We have concluded that the record in this case does not show any "established ... policy" of the court binding on the hearing judge. *See Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. 515, 522–23, 492 A.2d 1358 (1985) (trial judge not bound by prior ruling of another trial judge in same case). But in any event, the judge erred because he misconstrued the policy.

■ That policy, as we have observed, was directed to the auditor. The auditor pointed out that the $750 "fee limit" applied only in the absence of a "specific court order." The judge himself seems to have recognized this when at one point during the hearing he remarked "Mr. Middleton, the auditor, has been stating to you what his authority is, as an auditor, without referring it to a judge." But what appel-

---

5. Appellants do not argue that they are entitled to an allowance for fees in connection with this appeal.

lants did was refer "it" to a judge by excepting to the audit via the Md.Rule 2–543(f) procedure. When that happened, the question was no longer what authority the auditor had but what authority the court had to allow or reject the requested sums.

■ When parties to a deed of trust have included in the trust instrument an agreement setting attorney's fees in specific amount or in percentage terms, those fees will ordinarily be allowed on foreclosure unless (1) the attorney personally is the holder of the document of indebtedness; (2) the amount designated is grossly in excess of any reasonable amount; or (3) the fee is in fact payable to the creditor rather than to counsel. *Mishkin v. Willoner*, 36 Md.App. 111, 120, 373 A.2d 630 (1977). This is because "the parties have the right to make contracts and the courts the duty to enforce them in their integrity and entirety." *Id. Gaither v. Tolson*, 84 Md. 637, 639, 36 A. 449 (1897). *See also Mortgage Investors of Washington v. Citizens Bank and Trust Co. of Md.*, 278 Md. 505, 366 A.2d 47 (1976) (fee fixed in confessed judgment note).

■ The deed of trust before us did not fix a specific or percentage fee. It provided in pertinent part:

> In the event of any such default as aforesaid, [the Trustees] shall proceed to sell and dispose of ... the premises hereinbefore granted ... at public auction ... and, from the proceeds of such sale, first, to pay the expenses thereof, including attorney's fees and any money advanced as herein provided for. . . .

This was a contract to pay reasonable fees. *Gaither v. Tolson, supra. And see Meyer v. Gyro Transport Systems, Inc.*, 263 Md. 518, 630–32, 283 A.2d 608 (1971) (confessed judgment note). Since there is no suggestion that the *Mishkin* exceptions (1) or (3) apply in this case, the court's duty was to determine whether the fees requested were reasonable—a determination to be made on the basis of the need for the services rendered and the amounts charged for these services.

As to this, at the exceptions hearing, appellants produced extensive testimony as to the reasonableness of their fees in the foreclosure case. This testimony was in no way disputed or contradicted. Under these circumstances, we are tempted to direct that the full $900 fee be allowed. Nevertheless, as appellants point out, because of the basis on which the judge rejected this claim (to the extent it exceeded $750) he never addressed the reasonableness issue. Even though the testimony on that subject is uncontradicted, we cannot tell how the trial judge may evaluate and weigh it in the light of his experience and expertise. *Spessard v. Spessard*, 64 Md.App. 83, 494 A.2d 701 (1985). We shall remand the case so that the judge may do so. He is to allow the foreclosure fees up to $900 to the extent he finds them reasonable, based on the record of the exceptions hearing.

At the exceptions hearing (and in their exceptions), appellants also asked for an allowance of reasonable fees incurred in connection with the exceptions hearing. After the hearing they submitted a petition embodying such a request. The exceptions hearing was part of the foreclosure proceeding. Under the terms of the deed of trust, appellants were entitled to an allowance for reasonable fees for that hearing. It was error for the court to reject the request *in toto*, on the basis given. There has not been, however, any hearing on the reasonableness of those fees. Since this case must be remanded, we direct that on remand the court shall hold a hearing on those fees, and allow them to the extent they are reasonable.

## V.  *The Policy as to Bankruptcy Fees and Expenses*

This brings us to a second policy issue. It will be recalled that after their default on the note secured by the deed of trust, appellees went into bankruptcy. The noteholder, appellant National Permanent, engaged counsel to protect its interests in the bankruptcy proceedings and eventually obtained relief from the automatic stay produced by the bankruptcy. This permitted the foreclosure to proceed.

National Permanent advanced certain sums in connection with its participation in the bankruptcy, including $1,225 in attorney's fees, $125 for a title examination and $20 for telephone and postage expenses. The auditor rejected the latter two items altogether and allowed only $500 on account of the fees. The latter action was pursuant to another policy.

That policy, as explained by Mr. Middleton, was that "with respect to the amount of fees allowed for work done in any bankruptcy within the federal bankruptcy court ... [m]y limit there is $500, except on specific court order." The policy was established by "Judge Femia [when he] was the liaison judge for auditing purposes." [6] Also unwritten, the policy was adopted by Judge Femia at some time after 1981 (when Mr. Middleton became auditor).

■ A review of the record discloses no evidence that this policy, like the foreclosure fee policy, was ever adopted as a local or circuit rule or as a court policy. It was, so far as we can determine, only Judge Femia's policy. For the reasons stated in Part III of this opinion, we so hold, and we further hold that it was not binding on the judge who heard the exceptions below.

## VI. *Disallowance of Bankruptcy Fees and Expenses*

■ For reasons similar to those expounded in Part IV of this opinion, we conclude that the hearing judge in any event misapplied the bankruptcy policy. That policy, like the foreclosure fee policy, applied at best only to the auditor, not to the court hearing exceptions to the audit. Here again, we turn to the provisions of the deed of trust. In pertinent part, it provided:

> Either [the trustees] or the Holder may employ counsel for advice or for other legal service ... in connection with the debt hereby secured on the lien of these presents,

---

6. The Hon. Vincent J. Femia has been an associate judge of the Seventh Judicial Circuit since November 7, 1977.

with any litigation to which [the trustees] or the Holder may be made a part on account of this lien, or in connection with any litigation which may affect the title to the property securing the indebtedness hereby secured or which may affect said debt or lien. Any attorney's fees, costs, and expenses incurred pursuant to the terms of these presents, including reasonably estimated amounts to conclude the transaction, shall be added to and become a part of the indebtedness secured hereby.

Again, we are dealing with a matter of contract. If there was an issue before the hearing judge it was the need for services rendered in connection with the bankruptcy and the reasonableness of the charges for those services that the noteholder had in fact advanced. Ample evidence was adduced to support appellants' claims on these issues, including a voucher to support the advance for the $125 title examination fee that was disallowed by the auditor for lack of a voucher. This evidence was unquestioned and uncontradicted. For the reasons stated in Part IV of the opinion, we direct the hearing judge, on remand, to consider the reasonableness of the title examination charge and to allow it to the extent he finds it reasonable.[7] We do not remand for such consideration with respect to the disallowed portion ($725) of the $1,225 fee for legal services or the $20 item for telephone and postage expenses in the bankruptcy case. Those items, having been allowed by the bankruptcy court, are not subject to modification by the circuit court, at least under the circumstances of this case.

After appellant National Permanent entered the bankruptcy proceedings, it filed a claim there for certain expenses, including attorney's fees. The claim was for $750 at $100 per hour, plus a claim for additional fees of $100 per hour after November 23, 1983, the date the bankruptcy proceeding was filed. No party in interest objected to the

---

7. This was the only expense which was not separately itemized in National Permanent's proof of claim, as allowed by the bankruptcy court.

claim, which was allowed under 11 U.S.C. § 502(a) which provides

> A claim or interest, proof of which is filed under section 501 of this title ..., is deemed allowed unless a party in interest ... objects.

That allowance extended to the total of $1,225, which was produced by additional fees, at $100 per hour, incurred after November 23, 1983.

> By virtue of 11 U.S.C. § 506(b):
> [t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

National Permanent's claim was, of course, secured by the deed of trust which, by virtue of the "advances" provision quoted above, also provided for attorney's fees in the bankruptcy litigation. The advances paid for those fees became part of the indebtedness secured by the deed of trust. The foreclosure proceeds, moreover, produced a surplus of over $27,000 above National Permanent's basic indebtedness claim.

A bankruptcy court has the "power, indeed, the duty, to assure that no fee *other than a reasonable fee* be paid to attorneys who represent trustees, and other parties, in Bankruptcy proceedings." *Carter v. Woods*, 433 F.Supp. 291, 293 (U.S.D.C. W.D. Mo., C.D. (1977)) [emphasis in original]. Moreover, the bankruptcy court "has exclusive jurisdiction to determine the validity of ... the claims of ... creditors against the bankrupt." *In re Cloud Nine, Ltd.*, 3 B.R. 202, 203 (U.S. Bankruptcy Ct., D.N.M.1980).[8] Given

---

8. With respect to claims for attorney's fees arising under contracts such as a note or deed of trust, it has been held that the validity and construction of the contract is a question of state law, while the enforceability of the claim is a question of bankruptcy law. *Security Mortgage Co. v. Powers*, 278 U.S. 149, 154–55, 49 S.Ct. 84, 85–86, 73

this exclusivity of jurisdiction, and the general supremacy of federal bankruptcy law, *American Surety Co. v. Sampsell*, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663 (1946), *Globe Bank & Trust Co. v. Martin*, 236 U.S. 288, 35 S.Ct. 377, 59 L.Ed. 583 (1915), once the bankruptcy court had allowed the $1,225 attorney's fees and the $20 telephone and postage expenses, the circuit court had no power to review it or to disallow it. Therefore, on remand, the circuit court is directed to allow the full claim of $1,225 for attorney's fees and the $20 telephone and postage expense.

## VII. *Interest on Advances*

■ As previously noted, the deed of trust permitted the trustees or the noteholder to retain counsel "in connection with any litigation which may affect the title to the property securing the indebtedness ... or which may affect said debt or lien." It further provided that "fees, costs, and expenses [so incurred] ... shall be added to and become part of the indebtedness secured" by the deed of trust.

Pursuant to that provision, on March 24, 1984, National Permanent paid or advanced the $1,225 in attorney's fees we have just discussed, $125 for a title search, $150 for an appraisal fee, and $20 in telephone and postage. The total was $1,520. Since those advances became part of the indebtedness secured by the deed of trust, National Permanent would ordinarily be entitled to recover them as it could the basic debt, and to recover interest on them at the 7½ percent rate provided in the instrument with respect to the debt thereby secured. Although the auditor allowed $650 of these advances ($500 in attorney's fees and $150 for the appraisal fee), he did not allow any interest on the ad-

---

L.Ed. 236 (1928). *In re Morris*, 602 F.2d 826, 828–29 (8th Cir.1979). More recent decisions, citing legislative intent reflected in 1978 amendments to the Bankruptcy Act, have indicated that all those matters are to be decided under federal law. *In re Schlecht*, 36 B.R. 236, 239 (U.S. Bankruptcy Ct.D.Alaska 1983). *In re Carey*, 8 B.R. 1000 (U.S. Bankruptcy Court S.D.Cal.1981). We need not decide between these positions. The attorney's fee claim now under consideration was valid under Maryland law and the bankruptcy court allowed it.

vances.  Appellants' exception to this disallowance was rejected by the trial court.  This was error.

On remand, the trial court is directed to allow interest on the advances at 7½ percent from March 24, 1984.  The only unresolved item is the $125 for title examination.  *See* Part VI of this opinion.  To the extent that is allowed, it is to be included in the total of advances subject to interest.

## VIII.  *Summary*

We have held that the hearing judge erred in summarily rejecting the full $900 claim for foreclosure attorney's fees. On remand, he is to review the evidence produced with respect to that claim and on the basis of that evidence allow it to the extent he finds the fees reasonable.  He is also to allow fees and expenses incurred by appellants in connection with the exceptions hearing, to the extent he finds them reasonable.

We also have held that the trial judge erred in summarily rejecting the full claim for $1,225 in bankruptcy attorney's fees, the $125 claimed for title examination, and the $20 claimed for telephone and postage expenses.  As to the attorney's fees and the telephone and postage expenses, they are to be allowed in full.  As to the title examination fee, it is to be allowed to the extent the trial judge finds it reasonable.

Finally, we have held that the judge erred in disallowing interest on Permanent's advances.  Once the proper total of those advances has been determined (by a decision as to the title examination charge), interest on that total is to be allowed at 7½ percent from March 24, 1984.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

APPELLANTS TO BE PAID THEIR COSTS FROM SURPLUS FORECLOSURE PROCEEDS.