20 A.3d 153

**Bonnie L. MADDOX**

v.

**Edward S. COHN, et al.**

**No. 2777, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

May 26, 2011.

John B. Robins, IV, Salisbury, MD, for Appellant.

Bizhan Beiramee (Richard E. Solomon, Michael J. McKeefery, Cohn Goldberg & Deutsch LLC, on the brief), Towson, MD, for Appellee.

Panel: WOODWARD, ZARNOCH and GRAEFF, JJ.

ZARNOCH, J.

In this case, we have been asked to invalidate what appears to be a routine practice in some parts of Maryland of requiring a successful third-party bidder at a foreclosure sale to pay the trustees, who have been compensated by the court, an additional fee of $295 as an attorney's fee for the review of settlement documents. We agree with the Circuit Court for Wicomico County that the imposition of the fee is improper because there is no explicit provision in a statute, Maryland rule, local rule, or in the debt instrument itself authorizing this charge. Although we find that such a fee would have been improper had it been imposed, it was not charged in this case. Thus, we still affirm the circuit court's ratification of the sale and conclude that appellant had no standing to raise the fee question.

## FACTS AND LEGAL PROCEEDINGS

Appellant Bonnie Maddox purchased property on November 29, 1993, located on Athol Road in Mardela, Maryland, in Wicomico County. On February 16, 2007, Maddox obtained a mortgage on the property with Beneficial Mortgage Co. of Maryland ("Beneficial") for $87,512.32. After making $6,469.37 in payments on the principal, she subsequently defaulted on the mortgage on February 22, 2009. By July 2, 2009, Maddox owed Beneficial $81,512.32, including interest and late charges. Beneficial filed an affidavit of default and notice of intent to foreclose on September 4, 2009, initiating foreclosure proceedings through its substituted trustees: appellees Edward S. Cohn, Esq., Stephen Goldberg, Esq., Richard Rogers, Esq. and Richard Solomon, Esq.

Prior to the foreclosure sale, weekly advertisements appeared in the *Salisbury Daily Times* for three successive weeks containing the following provision: "Purchaser agrees to pay a fee of $295 to the Sellers' attorneys at the settlement for review of the settlement documents."[1] The auction took

---

1. Although the ad mentioned a fee of $295, during argument in the circuit court, counsel stated that in other cases sometimes a fee as high as $495 is charged.

place on November 9, 2009. At the sale, Beneficial was the highest, and presumably only,[2] bidder. The substituted trustees sold the property to Beneficial for $77,044. The trustees filed a Report of Sale with the court that same day, as is required following a foreclosure sale.

After the court issued a notice that the sale would be ratified and confirmed in 30 days, Maddox filed a timely exception to the Report of Sale, objecting to the proposed ratification.[3] She argued that the auction was improper because "as a condition of being able to submit an acceptable bid at the auction, any would-be purchaser was required to agree to pay a fee ... [that was] not authorized by the debt instrument or by the applicable rules governing sales of property in foreclosure proceedings." Appellees responded that Maddox had "no evidence showing that any bidders were specifically discouraged from bidding at the sale" because of the fee.

On February 4, 2010, the court held a hearing on the issue. To a degree, the court agreed with Maddox, stating that:

> [F]or the trustee to charge a fee to review the very documents that [it] has been charged by the Court to convey at a public sale, a fee outside of those approved by the Court for the identical work required by the appointment of the Court would be improper.

But the Court nonetheless determined that:

> [I]t's conceded, that it is the common practice ... it is not uncommon for such a charge to attend the publication and the requirement for preparation and review of documents prior to the sale. It is not hidden from the purchaser in

---

2. The record does not indicate whether any other parties were present at the auction. Presumably, if other parties were present or other bids were submitted, this information would have been included in the parties' briefs.

3. Maddox also simultaneously filed a motion to dismiss the foreclosure proceeding. However, she withdrew the motion at the February 4, 2010 hearing.

this case, because it was, in fact accompanying the publication.

The court concluded that the notice given, coupled with the lack of evidence of the fee's "chilling effect" on potential bidders undercut Maddox's argument. The court stated:

[W]hile the fee may be outside of what I consider to be anticipated under the Maryland rules, I cannot say that the sale as a result of the surcharge or the additional fee was not fair and not proper, because the bidders were notified that it would be charged to them and I don't have any evidence that anyone as a result thereof did not bid or that the results of the sale were otherwise inequitable or skewed or that there was a discouraging effect that affected the sale.

On the same day, the court issued an order denying Maddox's objections, and ratifying the foreclosure sale. Maddox timely noted this appeal and filed a motion to stay enforcement of the judgment pending appeal, which the court granted on March 10, 2010.[4]

## QUESTIONS PRESENTED

Appellant presents the following questions for our review:[5]

---

**4.** Apparently, despite the stay, the court erroneously issued a Final Order of Sale on May 4, 2010. Upon Maddox's motion, this order was stricken.

**5.** We have rephrased and consolidated appellant's questions. As presented in her brief, they are:

1. May a substitute trustee under a Deed of Trust filed for foreclosure, without court approval, authorization or scrutiny, unilaterally require that, in order to bid on the property at the sale, the successful bidder agree to pay to the Substitute Trustee's attorney, i.e., the Trustee or the Trustee's law firm, a stipulated fee ostensibly for review of the settlement documents?

2. Can a foreclosure sale be "properly made" if the Substitute Trustee imposes an improper condition on the successful bidder, i.e., the payment of a fee to the Trustee's attorney, which is not authorized by the Maryland Rules of Procedure or the debt instrument?

3. If a foreclosure sale i[s] not "properly made" because of the imposition by the Substitute Trustee of an improper condition on the successful bidder, is the burden of proof on the Defendant/Mortgagor

1. In a foreclosure sale, is it improper to require a successful bidder to pay an attorneys' fee to the attorney/trustees for reviewing settlement documents?

2. Does the advertisement of such a fee have a chilling effect on potential bidders?

For the following reasons, we will affirm the final order of ratification.

## DISCUSSION

### I. Standard of Review

In foreclosure cases, where an objection is made to the ratification of a sale, the trial court is required to ratify the sale if it is "satisfied that the sale was fairly and properly made." Md. Rule 14–305(e). However, if a sale was "procedurally irregular" or "the price [was] unconscionable," it is considered invalid, *Greenbriar Condo. v. Brooks,* 387 Md. 683, 742, 878 A.2d 528 (2005), and the court "may enter any order it deems appropriate." Md. Rule 14–305(e). The objecting party has the burden to prove that the sale was invalid, *J. Ashley Corp. v. Burson,* 131 Md.App. 576, 582, 750 A.2d 618 (2000), and must "set forth the alleged irregularity with particularity." *Bates v. Cohn,* 417 Md. 309, 319, 9 A.3d 846 (2010).

When a trial court rules on an exception to a foreclosure sale, and determines whether the sale should be ratified, the court considers both questions of fact and law. *Jones v. Rosenberg,* 178 Md.App. 54, 68, 940 A.2d 1109 (2008) (citing *S. Md. Oil, Inc. v. Kaminetz,* 260 Md. 443, 451, 272 A.2d 641 (1971)). On appeal, we defer to the trial court's factual findings unless they are clearly erroneous, while "[q]uestions of law decided by the trial court are subject to a de novo standard of review." *Id.*

---

to prove that prospective bidders were discouraged from attending the sale in order to establish that the sale was not "fairly and properly" made?

## II. Fee Provision

■ Maddox sets forth two reasons why the inclusion of the fee provision in the advertisement rendered the sale improper. First, she argues that including the fee was fraudulent because it had a chilling effect on prospective bidders by leading them "to believe that they must agree to pay the stated fee in order to place a successful bid" at the auction. Second, she claims that the fee for the trustees was not authorized by the court, and thus it was "compensation over and above that which is authorized by the debt instrument," as well as the state and local rules governing foreclosure proceedings.

While we agree that the fee advertised was not authorized, we affirm the ratification of the sale because the fee was not actually paid in this case, and because we do not believe it has been shown that the mere advertisement of the $295 fee was a deterrent to potential bidders. Therefore, Maddox has no standing to raise the issue.[6]

### A. Standing

■ As a threshold inquiry in any litigation, a party must be able to demonstrate "a real and justiciable interest that is capable of being resolved through litigation." *Norman v. Borison,* 192 Md.App. 405, 420, 994 A.2d 1019 (2010). This necessarily requires a showing of some kind of "injury-in-fact," or "an actual legal stake" in the outcome of the litigation. *Id.*

The fee was never actually charged in this case because the sale was a lender "buy-in." Even if the fee had been charged, Maddox was not the party who would have had to pay it; the fee was to be paid by the successful bidder. Therefore, the only way to prove injury-in-fact would be to show that the advertisement of the fee alone, rather than its imposition,

---

6. In their brief, appellees contend that the appeal is moot because they offered to vacate the sale and resell the property without advertising or charging the fee, but Maddox declined the offer. However, appellees conceded at oral argument that there is nothing in the record to indicate such an offer was made, and that Maddox declined. As such, we do not address the merits of this argument.

injured Maddox. Maddox could only show injury-in-fact, or an actual legal stake in the outcome of this litigation, if another bidder was willing to bid more money than Maddox owed Beneficial, but was deterred by the advertised fee.

In our review of the record, we find a lack of evidence showing that, had the fee been excluded, another purchaser would have paid more than $81,512.32 (what Maddox owed Beneficial) for the property, resulting in a surplus for Maddox. A surplus from the sale would be the only way the end result could have been different for her, thereby showing an injury-in-fact, or an actual legal stake in the outcome of the litigation. Because the record shows no evidence of a deterred, potentially higher bidder, there is no demonstrated difference in the outcome for Maddox that depends on whether the fee was advertised or not.

 Maddox argues that it is unfair to ask her to prove a negative, because the evidence we ask for is "impossible" to garner. Even if we could infer, based on the amount of the fee alone,[7] that it may have deterred some potential bidders, Maddox's defense is missing another critical evidentiary factor. A challenge to a foreclosure sale can allege, among various procedural irregularities in the sale, that "the creditor committed a fraud by preventing someone from bidding or by chilling the bidding." *Bates v. Cohn*, 417 Md. 309, 321, 327, 9 A.3d 846 (2010). Maddox alleges that appellees committed fraud by including the fee provision in the advertisement, which had a chilling effect on potential bidders who were deterred by the fee. Maddox must still prove that appellees committed fraud or acted deceptively by placing the fee in the advertisement. We have found no evidence in the record to show that by including the fee in the advertisement, appellees *intended* to deter other potential buyers from bidding on the property.

---

7. We note that the amount of the fee, $295, is not inherently "chilling" to potential bidders. It is a relatively modest amount whether viewed in isolation or measured against the size of the debt.

The allegation that appellees committed fraud to "chill the bidding" also makes little sense. Certainly, appellees and Beneficial would have benefitted from a higher bid on the property. The property was sold for less than the amount Maddox owed on the mortgage. By July 2, 2009, Maddox owed Beneficial $81,512.32, and Beneficial paid $77,044 for the property, resulting in a $4,468.32 deficiency. Had a higher bidder come along, Beneficial would have been able to recoup the entire amount Maddox owed. Absent evidence of fraud, or of a deterred higher bidder, we believe the record supports the circuit court's ratification of the foreclosure sale.

### B. Fee is Improper

██ Because the propriety of the attorney's fee was decided by the circuit court and briefed and argued here and because the issue is of sufficient importance, we state our views on whether, under the circumstances presented here, imposition of an additional fee by an attorney/trustee is permissible. Appellees argue that the fee is reasonable and proper in third-party sales because substantially more work is required as compared to a lender buy-in. We disagree and find that the imposition of such a fee, without authorization in a statute, rule, or in the debt instrument, is improper.

██ There is already a framework in place for compensating trustees in foreclosure proceedings. A foreclosure action may be initiated when a party who has conveyed property to a lender to hold as collateral for a debt defaults on the loan. *Fagnani v. Fisher*, 418 Md. 371, 381–83, 15 A.3d 282 (2011). Where, as here, the debtor conveys the property to a third-party trustee, instead of the lender, the legal relationship between the parties is evidenced by a deed of trust. *Id.*, 418 Md. at 382–83, 15 A.3d 282. The deed of trust acts as a "security interest device [that] transfers the legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." *Id.* (citations omitted).

The Court of Appeals has described the process of foreclosure when there is a deed of trust as follows:

[T]he deed of trust may contain a power of sale . . . [which] enables the trustee to sell the property upon the debtor's default, in order to reimburse the lender for the debt. Pursuant to the power of sale provision, a trustee may institute a foreclosure action, in which the trustee may order and direct that the mortgaged premises, or so much thereof as may be necessary to discharge the money due and costs, be sold for ready money.

*Id.*, 418 Md. at 382–84, 15 A.3d 282 (internal citations and quotations omitted). Following the sale and ratification by the court, the trustee must "convey the property to the purchaser," which necessarily includes reviewing the parties' settlement documents. Md. Rule 14–215(c).

During foreclosure proceedings, "the court itself is regarded as the vendor, and the trustee conducting the sale is considered to be the court's agent." *Fowler v. Fitzgerald*, 82 Md.App. 166, 173, 570 A.2d 866 (1990). As the court's agent, the trustee is entitled to compensation for facilitating the sale of the property. *Id.* at 177, 570 A.2d 866.[8]

In Maryland, there is no statewide rule governing the compensation of trustees. Instead, "judicial circuits [have] adopted local rules which . . . provide[ ] for the compensation that may be allowed to a trustee who conducted a foreclosure." *Id.*; *see also* Md. Rule 1–102 (stating that circuit and local rules may regulate the compensation of trustees in judicial sales). For example, the local rules in the First Judicial Circuit of Maryland, which encompasses Wicomico County, provide for the following compensation for a trustee: "10% on the first $3,000.00 and 5% on the balance of the purchase price." Local Rule BR 1(a).[9]

---

8. This is not universally true. In England, trustees may not be compensated unless there is an explicit contract with the party who appointed the trustee authorizing compensation. Hyman Ginsberg, *Equity Jurisprudence and Procedure in Maryland* at 49 (1928). In the United States, however, courts generally allow trustees to be compensated for their services. *Id.*

9. Although some have argued that a foreclosure sale is not a judicial sale and thus, the circuit court cannot regulate trustee compensation

When an attorney is also acting as a trustee, the question of whether the attorney is entitled to separate payment for each role arises.[10] Early Maryland caselaw recognizes that if an attorney is acting as a trustee, the attorney may receive both an attorney's fee and a trustee's commissions. *Title Guarantee & Trust Co. v. Burdette,* 104 Md. 666, 671, 65 A. 341 (1906) (attorney acting as a trustee is "entitled to be paid for his professional services out of the common fund, as though the two capacities were separate"); *Farmers' and Planters' Bank v. Martin,* 3 Md.Ch. 224, 225 (1852) ("It has been the constant habit of the Court, when its trustees employed to sell property are compelled to bring suit to enforce the payment of the purchase-money, to allow a commission of 5 per cent. to the attorney engaged by them; and when the trustee is himself an attorney, and collects the money in that capacity by proceedings at law, similar allowance has always been made to him."); *Farmers' and Planters' Bank v. Martin,* 7 Md. 342, 345 (1855) (attorney acting as trustee "is allowed his legal fee for filing the petition, and commissions on the amount of the proceeds of sale"); *Gaither v. Tolson,* 84 Md. 637, 638, 36 A. 449 (1897) (holding that in a foreclosure sale it was appropriate for an attorney to receive both trustee's commissions for making the sale, as well as attorney's commissions for collecting the debt).

Upon adopting its local rules, the Second Judicial Circuit took a similar approach as our early cases, providing that:

> Where an instrument under which a sale is made provides for the allowance of a counsel fee, the amount thereof **shall** be charged against the estate **in addition to** the commissions provided for in this Rule.

---

under local rules, the leading treatise rejects this view. Alexander Gordon, *Gordon on Maryland Foreclosures* § 33.31 (4th ed. 2004). In addition, Md. Rule 14-215 expressly provides that foreclosure sales are to follow the procedures set forth in Md. Rule 14-305, which deals with judicial sales.

**10.** In England, an attorney acting as a trustee is generally not entitled to compensation for professional services rendered. Ginsberg, *supra* n. 8 at 49-50.

Local Rule BR 8(c) (emphasis added). The commissions referenced in the rule refer to the compensation owed to the fiduciary, or trustee. Local Rule BR 8(a).

However, the Second Circuit approach is in the minority. The majority of local rules in Maryland regarding foreclosure proceedings give more discretion to the individual circuit courts. Our more recent caselaw reflects this approach, stating that, unless statutory authority dictates otherwise, circuit courts have "the authority to control both the amount and the aggregation of these fees." *Fowler*, 82 Md.App. at 176, 570 A.2d 866. For example, the local rules in the First Judicial Circuit, as well as a majority of the Judicial Circuits in Maryland, leave the aggregation of attorney's fees and of trustee's commissions to the discretion of the court:

> When an instrument under which a sale is made provides for the allowance of a counsel fee, the amount thereof **may** be charged against the estate, or against the compensation to the fiduciary, or divided between them as justice may require.

Local Rule BR 1(c).[11] Under this type of rule, the court has several options when dealing with one party who is both the attorney and trustee during a foreclosure proceeding. If the court allows the attorney's fee to be charged to the estate, the court is allowing the attorney/trustee to double-charge and receive an additional fee separate from that owed to the trustee. If the court orders the attorney's fee to come out of the trustee's compensation, the attorney/trustee is only receiv-

---

11. The following circuits have identical or nearly identical provisions to the Second Judicial Circuit: the Third Judicial Circuit Local Rule BR 2(c); the Fifth Judicial Circuit Local Rule BR 1(c); the Fourth Judicial Circuit, Local Rule BR 1(c); the Sixth Judicial Circuit Local Rule BR 1(c); the Seventh Judicial Circuit Local Rule BR 7(c). Baltimore City marches to the beat of a different drummer. The applicable local rule there regarding attorneys' fees provides that:

> If an instrument contains a provision for the allowance of a counsel fee, the amount of which the court shall find to be greater than the fair value of the legal services for which such fee is provided, the excess shall be deducted from the commissions allowed under the above rule.

Local Rule BR 7.

ing one fee. Dividing the fee has a similar result as double-charging, but the attorney's separate fee is reduced by the amount that is taken out of the trustee's compensation.

 There is some question as to "[w]hether, and to what extent these local rules are still in effect," *Fowler,* 82 Md.App. at 176–77, 570 A.2d 866, as most appear not to have been updated in over 30 years: First Judicial Circuit of Maryland (1972); Second Judicial Circuit of Maryland (1970); Third Judicial Circuit of Maryland (1978); Fourth Judicial Circuit of Maryland (1975); Fifth Judicial Circuit of Maryland (1980); Sixth Judicial Circuit of Maryland (1974); Seventh Judicial Circuit of Maryland (1978); Supreme Bench of Baltimore City [12] (1977).[13] However, it is important to emphasize that courts undoubtedly have the authority to control the *aggregation* of the fees. *See Fowler,* 82 Md.App. at 176, 570 A.2d 866. So, *if otherwise consistent with local rules,* a court may allow an attorney also acting as a trustee to receive attorney's fees in *addition* to its trustee compensation, or prohibit the attorney/trustee from double-charging.[14]

 While the judicial circuits differ over their approach to double-charging, there is a consensus that any valid attorney's fee must be explicitly provided for in the debt instrument. If the instrument does not provide for an attorney's fee, or provides for one only under certain conditions that have not been satisfied, the attorney is not entitled to a fee. *See Tolzman v. Gwynn,* 22 Md.App. 564, 574, 324 A.2d 179 (1974) (claim for attorney's fee was not permitted where the debt instrument provided for a 10% attorney's fee only if judgment was entered by a confession, which did not occur).

---

12. The Supreme Bench is now the Circuit Court for Baltimore City.

13. The local rules for the Maryland circuit courts are compiled in an out-of-print book titled *Maryland Circuit Court Rules,* published by the Rules Service Co.

14. *Gordon, supra* at § 33.3, n. 9 states that courts in some circuits deny payment of an attorney's fee to an attorney/trustee on the basis of local rules.

Appellees assert that the deed of trust here includes a provision allowing them to charge the fee. They point us to the following language to support their claim:

> Upon borrower's breach ... Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided herein, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

We do not agree that this language gives them permission to impose an attorney's fee on the third-party purchaser.

Unlike the advertisement, the language in the deed of trust does not specify the *amount* of attorneys' fees. In the context of a confessed judgment note, the Court of Appeals held in *Mortgage Investors of Washington v. Citizens Bank and Trust Company of Maryland* that an attorney's fee is permissible so long as the debt instrument provides for a specific amount to be paid. 278 Md. 505, 509–510, 366 A.2d 47 (1976). This Court applied the same reasoning to an agreement in a deed of trust in *Walker v. Haywood,* 65 Md.App. 1, 498 A.2d 1198 (1985). In *Walker,* we stated that the fee included in the debt instrument can be either a specific amount or a percentage of the amount collected at the sale. *Walker v. Haywood,* 65 Md.App. 1, 14, 498 A.2d 1198 (1985) ("When parties to a deed of trust have included in the trust instrument an agreement setting attorney's fees in specific amount or in percentage terms, those fees will ordinarily be allowed on foreclosure[.]"). In *Mortgage Investors,* the Court stressed that an attorney's fee may be subject to reversal upon judicial review if "a term such as 'reasonable fee' is substituted for a fixed sum or a percentage of the amount recovered," in the debt instrument. 278 Md. at 509–510, 366 A.2d 47.[15] The Court

---

15. Even if the fee is explicitly written in the deed of trust, the court still has the duty to refuse to allow payment if it determines "that the amount designated was grossly in excess of any reasonable amount[.]" *Mishkin v. Willoner,* 36 Md.App. 111, 120, 373 A.2d 630 (1977). *See also Bunn v. Kuta,* 109 Md.App. 53, 60–61, 674 A.2d 26 (1996) ("[C]ourts have the inherent power to review ... compensation and expenses paid in connection with forced sales including judicial sales and sales requiring ratification by a court."). Ordinarily, however, the

reasoned that when there is a fixed sum or percentage, it is permissible because the parties have agreed to it. *Id.* A "reasonable fee," however, is too vague to constitute a stipulation between the parties. *See id.*

Here, the language of the debt instrument does not explicitly state that a $295 fee will be charged to the successful bidder. Rather, it merely provides for "reasonable attorneys' fees" and does not state a specific amount or percentage. If the fee had been charged, it would not have been authorized by the deed of trust, and would therefore have been subject to reversal upon judicial review.

Moreover, the deed of trust evinces the legal relationship between the lender and borrower. The type of fee at issue here is imposed on a third-party purchaser. Because the deed of trust only provides for fees to be charged to the borrower, not to a third-party purchaser, the debt instrument in this case does not permit the imposition of the fee. In addition, it would appear that a deed of trust would not ordinarily authorize a charge to a third-party because it is a contract between the lender and borrower.

Finally, given the court-regulated nature of compensation for handling foreclosure sales, the fee here is also questionable because it evades review by a court. In Maryland, "a court has general power to review the amount of compensation to trustees or persons conducting a sale subject to ratification by a court." *Bunn v. Kuta,* 109 Md.App. 53, 68, 674 A.2d 26 (1996). Appellees assert that court approval of the fee is not required because the "fee is paid by a third-party; and, thus, the fee is not subtracted from the proceeds of sale to be distributed by the trustees." However, this argument ignores the entire purpose of the framework for compensation in foreclosure cases. Why would the framework exist if some fees were allowed to circumvent it?

court will defer to the instrument, which indicates the contract between the parties relating to compensation. *Bunn,* 109 Md.App. at 61, 674 A.2d 26.

80

██ When a circuit court exercises supervision over forced sales of property, it does so as part of its equity jurisdiction. *Fowler,* 82 Md.App. at 181, 570 A.2d 866. As such, a court may determine that fees awarded in forced sales are "inconsistent with fundamental equity principles." *Id.* at 181–82, 570 A.2d 866. Here, a third-party fee is not reviewed by the court at any stage of the foreclosure proceedings. The court does not approve the fee before it is included in the advertisement, or when it is charged to the purchaser. Also, the local rules provide that within 15 days of the filing of the Report of Sale, the party who made the sale must give the "vouchers for his expenses in connection" with the sale to an auditor. Local Rule BR 6. However, the fee is not reported to the court's auditor.

Although the debtor in a foreclosure proceeding may not be harmed by the fee if there is no chilling effect on the bidding, the third-party purchaser is forced to pay a fee which is not subject to review under the established framework for compensating those conducting foreclosure sales. Because this fee evades judicial review, no court has the opportunity to determine whether it is equitable, or whether it is "inconsistent with fundamental equity principles." *See id.* at 181–82, 570 A.2d 866. Under these circumstances, where an attorney's fee is not provided for in the debt instrument or authorized by any rule, an attorney/trustee may not charge such a fee to a third-party purchaser.

**JUDGMENT OF THE CIRCUIT COURT AFFIRMED. COSTS TO BE EVENLY DIVIDED BETWEEN THE PARTIES.**